**William A. ANTHONY, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
**Respondent.**

No. 94–3508.

United States Court of Appeals,
Federal Circuit.

June 27, 1995.

**622**

Craig D. Robinson, Brousseau & Robinson, of Springfield, MA, submitted for petitioner. With him on the brief was Paul Bradford Brousseau.

Carold L. Wallack, Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, submitted for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and James M. Kinsella, Asst. Director. Also on the brief were Lorraine Lewis, General Counsel and Jill Gerstenfield, Attorney, Office of General Counsel, Office of Personnel Management, of counsel.

Before NEWMAN, PLAGER, and CLEVENGER, Circuit Judges.

PLAGER, Circuit Judge.

This case requires us to decide, for the first time, whether the Supreme Court's interpretation of the statutes governing our review of disability retirement decisions involving benefits under the Civil Service Retirement System ("CSRS"), *see Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), applies to the parallel provisions for review of disability retirement decisions under the Federal Employees Retirement System ("FERS").[1] We conclude that it does. Under the limited scope of review thus available to us, we find no error in the decision of the Merit Systems Protection Board ("Board"), which affirmed the Office of Personnel Management's denial of FERS disability retirement benefits to William A. Anthony ("Petitioner").[2] The Board's decision is *affirmed.*

## BACKGROUND

Petitioner served as Postmaster in Stockbridge, Massachusetts. In March 1986, he suffered a work-related spinal injury, and in August 1986 he underwent surgery for a herniated disc. Thereafter he returned to his Postmaster duties.

In 1989, Petitioner, as a result of violating certain provisions of the Postal Service Code of Ethical Conduct, was demoted and transferred to a distribution clerk position in a neighboring town. The Postal Service wrote to Petitioner on September 28, 1989, instructing him to report to his new position on October 1, 1989. Citing back problems relating to his 1986 injury, Petitioner did not return to work, instead obtaining successive periods of administrative leave and leave without pay.

On May 9, 1990, Dr. Laurence Cohen, the doctor who performed Petitioner's 1986 disc operation, wrote to the Postal Service informing it that in Dr. Cohen's opinion, Petitioner was partially disabled:

> [H]e should avoid work which requires prolonged sitting or standing or repeated bending. He should probably not lift more than 15 or 20 pounds of weight on a repetitive basis. Finally, he probably can be expected to have difficulty with a 40 hour work week and, possibly, should even be considered for working at a less than 40 hour work week.
>
> I think these recommendations are permanent and I think his condition is not

---

1. In 1986, Congress enacted FERS as a successor to the retirement benefits scheme for federal employees under CSRS, which was established in 1920. *See* S.Rep. No. 99–166, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 1405, 1406; H.Conf.Rep. No. 99–606, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 1508, 1509–10.

Both systems presently remain in effect; persons employed on or after January 1, 1984, are automatically placed in FERS. *See* 5 U.S.C. § 8401(11) (1988); 42 U.S.C. § 410(a)(5) (1988).

2. 63 M.S.P.R. 289 (1994).

only permanent, but might well worsen in time.

On July 3, 1990, the Postal Service offered Petitioner a modified "light-duty" distribution clerk position, which would not require heavy lifting, bending, or prolonged sitting or standing. Petitioner rejected this position and remained absent from work. Petitioner did not return to work at any time following his 1989 demotion.

In December 1990 Petitioner applied to the Office of Personnel Management (OPM) for FERS disability retirement. Disability benefits under FERS are governed by Subchapter V of Title 5 United States Code, Chapter 84. *See generally* 5 U.S.C. §§ 8451–8456 (1988).[3] Section 8451(a)(1)(A) provides that an employee who completes at least 18 months of creditable civilian service and has become disabled shall be retired, with an annuity calculated in accordance with the statute, on application by either the employee or the agency. 5 U.S.C. §§ 8451(a)(1)(A), 8451(c).

However, the statute provides that an employee will not be eligible for such disability retirement if the employee "has declined a reasonable offer of reassignment to a vacant position in the employee's agency for which the employee is qualified." An offer of reassignment must involve a position at the same or higher grade or pay level and tenure as the employee's current position, and must be full-time if the current position is full-time. *See id.* § 8451(a)(2)(A); 5 C.F.R. § 844.102; *see also* Federal Personnel Manual Supp. 831–1, Subchapter S10–4(k) (June 23, 1983) (part-time schedule is not considered at same pay level as full-time schedule).

OPM denied Petitioner's application on the grounds that the Postal Service had offered him a light-duty position in July 1990 to accommodate his medical limitations and that he had failed to prove his inability to perform "useful and efficient service" in that position.[4]

Petitioner then appealed to the Board, arguing that the medical evidence proved him unable to perform the light-duty position. Petitioner also argued that the light-duty position was not a "reasonable accommodation," i.e. a reasonable offer of reassignment, for the purpose of determining eligibility for benefits, in that it was not permanent or full-time and thus not of the same tenure and grade or pay level as the regular distribution clerk position.

Based on her review of the medical evidence, the Administrative Judge (AJ) concluded that Petitioner had not proven that he could not perform in the light-duty position. The AJ rejected Petitioner's claims that the light-duty position was not permanent or full-time, citing the Postal Service's unrebutted testimony that the light-duty position was "available as long as [Petitioner] remained disabled." The AJ also found that the light-duty position was not rendered impermanent by a 1987 arbitral award, which construed the terms of the Postal Service's National Collective Bargaining Agreement ("National Agreement") to allow the agency, on occasions when there was a shortage of work, to send light-duty employees home early without full-time pay.

With respect to whether the position was full-time, the AJ found that Petitioner had not shown any assignment to a part-time schedule, and that while the Postal Service had indicated its willingness to reduce Petitioner's hours if deemed necessary by his doctor, the agency's initial offer was for full-time light-duty work. The AJ noted that because Petitioner had never reported for work, his concern that the hours would be less than full-time was purely speculative.

Accordingly, the AJ affirmed OPM's denial of disability retirement benefits based on Petitioner's failure to prove by a preponderance of the evidence that he was unable to

---

**3.** Unless otherwise noted, all United States Code citations are to the 1988 edition.

**4.** *See* 5 U.S.C. § 8451(a)(2)(A)(iii). OPM apparently sent Petitioner a preliminary determination of denial on February 27, 1991, which allowed Petitioner to submit any additional evidence within 30 days; this letter is not in the record.

Petitioner did not submit further evidence within that time and OPM issued a final denial on May 10, 1991. Petitioner requested reconsideration, submitting additional evidence relating to a spinal fusion operation he underwent in May 1991. On October 6, 1993, OPM denied reconsideration.

perform in the light-duty position. The AJ's decision became the final decision of the Board following denial of Petitioner's Petition for Review. 5 C.F.R. § 1201.113(b) (1994). This appeal followed. We have jurisdiction over the appeal under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9). *See Lindahl v. Office of Personnel Management,* 470 U.S. 768, 791–99, 105 S.Ct. 1620, 1633–38, 84 L.Ed.2d 674 (1985).

## DISCUSSION

On appeal, Petitioner asserts that the Board "misread, overlooked and failed to properly interpret medical evidence" in concluding that he failed to prove inability to perform the duties of the light-duty position. He also renews his claim that the light-duty position was not a reasonable offer of reassignment because it was not permanent or full time.

### I.

■ We first consider the scope of our review of the Board's decision. Ordinarily, this court reviews final decisions of the Board under the Administrative Procedure Act-type standard found at 5 U.S.C. § 7703(c) (1988).[5] This means that with regard to factual findings and conclusions, we review the Board's decision to determine if there is substantial evidence in the record supporting factual findings, and to ensure that, in light of that evidence, conclusions of fact and decisions emanating therefrom are not arbitrary or capricious. Petitioner is of the view that this standard applies to his appeal, and that we may determine whether the record supports the Board's assessment of the medical evidence regarding Petitioner's disability.

■ The Government, on the other hand, is of the view that Congress has restricted access to judicial review in disability retirement cases, and that, under 5 U.S.C. § 8461(d), the Board's factual findings and conclusions regarding the medical evidence

are essentially unreviewable. We contemplate the Government's argument with appropriate skepticism, since, as the Supreme Court has said, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Lab. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967); *see also Dunlop v. Bachowski,* 421 U.S. 560, 567–68, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975). Nevertheless, we conclude that under the applicable law the Government is correct, and our scope of review of FERS disability retirement determinations is substantially truncated.

■ Section 8461 of Title 5, which sets out OPM's authority to administer FERS benefits, including disability retirement, provides that OPM "shall determine questions of disability and dependency," and that "[e]xcept to the extent provided under subsection (e), the decisions of [OPM] concerning these matters *are final and conclusive and are not subject to review."* 5 U.S.C. § 8461(d) (emphasis added). Subsection (e) provides:

(e)(1) Subject to paragraph (2), an administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter administered by [OPM] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.

(e)(2) In the case of any individual found by [OPM] to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8451, the procedures under section 7701 [authorizing Board review] shall apply and the decision of the Board shall be subject to judicial review [by the Federal Circuit] under section 7703.

5 U.S.C. § 8461(e).

These provisions on their face indicate that, except with respect to findings under

5. Section 7703(c) provides that "[i]n any case filed in the [Federal Circuit], the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence...."

subsection (e)(2) concerning an applicant's mental condition (which are subject to review by this court under the APA standard of § 7703), OPM's factual findings and conclusions on disability may be reviewed only by the Board (under subsection (e)(1)) and not by this court. Moreover, these provisions mirror 5 U.S.C. §§ 8347(c) and (d), which apply to disability determinations under the CSRS. *See* 5 U.S.C. §§ 8347(c) and (d).

In *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 791, 105 S.Ct. 1620, 1633, 84 L.Ed.2d 674 (1985), the Supreme Court interpreted the CSRS provisions to preclude judicial review of the "factual underpinnings" of disability determinations. However, contrary to the conclusion reached by a majority of this court sitting *in banc, Lindahl v. Office of Personnel Management*, 718 F.2d 391 (Fed.Cir.1983) (*in banc*), the Supreme Court, itself divided, held that Congress had not withdrawn *all* judicial review of physical disability retirement determinations under § 8347. The statute did not preclude review of whether there had been "'a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination.'" *Lindahl*, 470 U.S. at 791, 105 S.Ct. at 1633 (quoting *Scroggins v. United States*, 397 F.2d 295, 184 Ct.Cl. 530, *cert. denied*, 393 U.S.

952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968) (internal quotation marks omitted)).[6] The Court majority examined the legislative history surrounding amendments to § 8347 in 1980, which added § 8347(d)(2) to provide judicial review of factual findings regarding the mental condition of involuntarily retired employees.[7] The Court found that in enacting this amendment, Congress was aware that the so-called *"Scroggins"* standard of review was considered to apply to disability retirement determinations generally, and did not indicate any intent to eliminate such review. *Id.* 470 U.S. at 780–85, 787, 105 S.Ct. at 1627–30, 1631. The majority concluded that the 1980 amendments had preserved *Scroggins* review generally, and simply replaced such review with traditional APA review, including substantial evidence review of factual findings, in cases involving the mental condition of an involuntarily retired employee. *Id.* at 781–82, 105 S.Ct. at 1627–28.[8]

This court of course follows *Lindahl* in reviewing CSRS disability retirement determinations. Under this standard we must reject challenges to the Board's factual determinations on physical disability. *See, e.g., Smith v. Office of Personnel Management*, 784 F.2d 397, 399 (Fed.Cir.1986) (challenge to sufficiency of evidence of disability was not error going to heart of administrative deter-

**6.** In *Scroggins v. United States*, 397 F.2d 295, 184 Ct.Cl. 530, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), the Court of Claims held that the finality provision in § 8347 precluded it from reviewing an appeal of an involuntary retirement following a finding of mental disability by OPM's predecessor, the Civil Service Commission. 397 F.2d at 297. Quoting its finding in an earlier involuntary retirement case, the court stated that "at best, a court can set aside the Commission's determination 'only where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error "going to the heart of the administrative determination,"'" *Scroggins*, 397 F.2d at 297 (quoting *Gaines v. United States*, 158 Ct.Cl. 497, 502, 1962 WL 9303 *cert. denied*, 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962)). The court found no such error in Scroggins' case. *Scroggins*, 397 F.2d at 298–300 & n. 7.

**7.** The impetus for this amendment was the perception that several agencies "had used involuntary mental disability retirements as a disciplin-

ary tool against unpopular employees and ... the finality language of § 8347(c) had worked a 'devastating effect' on the ability of courts to scrutinize the evidentiary underpinnings of such dismissals." *Lindahl*, 470 U.S. at 783, 105 S.Ct. at 1629 (quotation omitted).

**8.** Four Justices dissented, arguing that the statutory language on its face clearly limited review of OPM's disability retirement decisions to the Board, except in cases involving the employee's mental condition, and that the legislative history amply supported this view. 470 U.S. at 801, 804–10, 105 S.Ct. at 1638–39, 1639–40 (White, J., dissenting). The dissent disagreed with the majority's characterization of events surrounding the 1980 amendments. Rather than "reenacting" the finality provision of § 8347 and implicitly ratifying *Scroggins* review for disability cases generally, the dissent argued, Congress simply created a limited exception to an otherwise complete bar to judicial review of disability retirement determinations. *Id.* at 802–03, 105 S.Ct. at 1639. However, unless and until the Supreme Court alters its interpretation of § 8347, there is no basis for this court to reexamine that issue.

mination); *McEachern v. Office of Personnel Management,* 776 F.2d 1539, 1545 (Fed.Cir. 1985) ("We cannot substitute our judgment on medical evidence for a determination of the Board."); *Smith v. Office of Personnel Management,* 760 F.2d 244, 246 (Fed.Cir. 1985) (refusing to review medical statements and bills); *cf. Bruner v. Office of Personnel Management,* 996 F.2d 290, 291 (Fed.Cir. 1993) (Board's failure to allocate properly burdens of production and persuasion was reviewable because it implicated important procedural right and error going to heart of administrative determination).

We conclude that the same standard should apply to our review of FERS disability determinations. As noted above, §§ 8461(d) and (e)(1) and (2) are worded identically to §§ 8347(c) and (d)(1) and (2). Both statutes serve the same purpose of identifying the scope of OPM's authority to administer disability retirement and other benefits. Similarity of language and purpose argues strongly for applying the same interpretation to both § 8461 and § 8347. *See Oscar Mayer and Co. v. Evans,* 441 U.S. 750, 756, 760, 99 S.Ct. 2066, 2073–74, 60 L.Ed.2d 609 (1979); *Northcross v. Memphis Bd. of Educ.,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).

Additionally, Congress enacted the FERS scheme, including OPM administration of that scheme under § 8461, after *Lindahl* was decided. Pub.L. No. 99–335, Title I, § 101(a), 100 Stat. 514, 516 (1986). Presumably Congress knew that *Lindahl* precluded judicial review of the Board's factual determinations on physical disability under CSRS, and intended that limitation to apply to FERS disability determinations as well. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381–82 & n. 66, 102 S.Ct. 1825, 1840–41 & n. 66, 72 L.Ed.2d 182 (1982) (" 'where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.' ") (quoting *Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978)); *Lindahl,* 470 U.S. at 782–83, 105 S.Ct. at 1628–29 (Con-

gress' failure expressly to repeal prior judicial construction of scope of review of disability determinations creates presumption that Congress intended to embody that construction in amended statute). Nothing in the legislative history of § 8461 indicates that Congress intended a different scope of review of disability determinations from that applied under § 8347.

■ Accordingly, we hold that this court is precluded by 5 U.S.C. § 8461(d) from reviewing the factual underpinnings of physical disability determinations, but may address whether there has been a "substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.' " *Lindahl,* 470 U.S. at 791, 105 S.Ct. at 1633 (quotation omitted). Petitioner does not assert that the Board's disability findings implicated any procedural, legal, or other fundamental error; he simply asserts that the Board wrongly weighed the evidence, a claim we may not address.

## II.

We may address Petitioner's claim that the light-duty position was not permanent or full-time and thus not of the same tenure and grade or pay level as the regular distribution clerk position. Such claim concerns the proper construction of the Postal Service offer and of the National Agreement, raising questions of law rather than of fact. Moreover, this claim does not concern Petitioner's ability satisfactorily to perform in the light-duty position, but whether that position properly may be considered in determining Petitioner's eligibility for benefits. If not, then relying on that position to deny benefits would constitute an error "going to the heart of the administrative determination."

### A. Full–Time

■ Petitioner first argues that the Postal Service effectively offered a less than full-time position. Petitioner bases this assertion on the fact that the offer expressly contemplated Petitioner's working less than full-time if his doctor so advised, and the Postal Service already had received Dr. Cohen's

May 9, 1990 letter advising that Petitioner may have difficulty working a full-time schedule.

We disagree with Petitioner's reading of the offer. The light-duty position on its face was full-time, covering 44.16 hours per week. While the offer states that Petitioner "may work 2400 to 650 [i.e., midnight to 6:50 a.m. or 34.16 hours per week] or less depending on the advice of Dr. Cohen," this meant simply that Petitioner could work full-time hours until, based on Dr. Cohen's advice, he chose to work a reduced schedule. We find nothing in Dr. Cohen's equivocal remarks—that Petitioner "probably can be expected to have difficulty with a 40 hour work week and, possibly, should even be considered for working less than a 40 hour work week"—to require a different interpretation of the Postal Service's offer.

[redacted] Petitioner further asserts that the light-duty position is less than full-time because the National Agreement allows the Postal Service to send light-duty employees home early without full-time pay on occasions when there is a shortage of work. *See United State Postal Serv. v. American Postal Workers Union,* Case No. H1C-4E-C-35208 (1987) (Mittenthal, Arb.), at 4-7 ("Mittenthal award"); *Gamble v. United States Postal Serv.,* 48 M.S.P.R. 228 (1991) (employee sent home early during work shortages was collaterally estopped by Mittenthal award from claiming entitlement to full-time light-duty work). Although he does not cite them, Petitioner's argument also implicates 5 U.S.C. § 8451(a)(2)(D) and 5 C.F.R. § 844.102, which require that a proposed reassignment of a Postal Service employee not be inconsistent with the terms of a collective-bargaining agreement covering the employee. *See* 5 U.S.C. § 8451(a)(2)(D); 5 C.F.R. § 844.102.

Again, we reject Petitioner's argument. In the Mittenthal award, the arbitrator construed Article 13 §§ 3B and 3C of the National Agreement, which provided respectively that light-duty assignments may be created from part-time hours, and that light-duty employees' "tour hours, work location and basic work week shall be those of the light duty assignment and the needs of the service, whether or not the same as for the employee's previous duty assignment." *Collective Bargaining Agreement Between American Postal Workers Union,* AFL-CIO and U.S. Postal Service, Nov. 21, 1990-Nov. 20, 1994, at 62-63; Mittenthal award, at 5-6. The arbitrator concluded from these provisions that the Postal Service could send light-duty employees home early without full-time pay during occasional work shortages, without violating Article 8, which states that a full-time position shall be 8 hours per day and 40 hours per week.

First, it is unclear whether Article 13 applies to Petitioner at all, as that provision addresses requests for light-duty work voluntarily submitted by injured employees. *See Collective Bargaining Agreement Between American Postal Workers Union, AFL-CIO and U.S. Postal Service,* Nov. 21, 1990-Nov. 20, 1994, at 60. Here, Petitioner did not voluntarily request light-duty assignment; rather, the agency offered it to him pursuant to 5 U.S.C. § 8451(a)(2)(B). Nor has Petitioner alleged or shown that his light-duty position was created from part-time hours. Petitioner's concerns arising from the operation of Article 13, therefore, appear misplaced.

Second, even assuming that Article 13 applies, we see no inconsistency with the National Agreement in considering Petitioner's reassignment to be full-time. Whatever the National Agreement *permits* the Postal Service to do in the event of an occasional work shortage, it does not *require* the Postal Service to provide less than full-time hours to light-duty employees. We see nothing in Article 13 to preclude the Postal Service from committing itself, as it did in this case, to provide full-time light-duty hours.

Accepting Petitioner's position effectively would invalidate all light-duty positions *ab initio* as reassignments for injured full-time employees. Such limitations are not required by the statute, regulations, or the National Agreement, and we decline to impose them here.

*B. Permanent*

[redacted] Petitioner also argues that the light-duty position is not permanent, and thus not

of the same tenure as the regular distribution clerk position, because the Postal Service has not provided a written description of the position as permanent. This argument is without merit. OPM regulations define a "permanent position" as "an appointment without time limitation," and "tenure" as "the period of time an employee may reasonably expect to serve under his current appointment." 5 C.F.R. §§ 844.102, 210.102(b)(17) (1994). The Board found, and Petitioner does not dispute, that the Postal Service offered Petitioner the light-duty position for as long as he remained disabled. In other words, it was an appointment without time limitation (except, of course, to the extent that Petitioner's disability ceased and he could return to regular duties), and Petitioner reasonably could expect to hold the position for the duration of his disability. The lack of a written statement of permanence is irrelevant, when nothing in the record suggests impermanence.[9]

Accordingly, we find that the Board did not err in concluding that Petitioner had failed to prove that the light-duty position was not permanent or full-time and was not a reasonable offer of reassignment.

## CONCLUSION

For the reasons discussed above, the decision of the Board is

*AFFIRMED*

---

**9.** Nor does the National Agreement in any way render the light-duty position impermanent; notably, both the National Agreement and the Pitts- field Post Office Memorandum of Understanding, implementing the National Agreement, expressly provide for permanent light-duty positions.