**Thomas N. TREVAN, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**Appeal No. 95–3078.**

United States Court of Appeals, Federal Circuit.

Oct. 31, 1995.

Thomas N. Trevan, New York City, submitted Pro Se.

William K. Olivier, David M. Cohen, and Sharon Y. Eubanks, Department of Justice, Washington, DC, submitted for respondent.

Before PLAGER, CLEVENGER, and BRYSON, Circuit Judges.

PLAGER, Circuit Judge.

This case requires us to address an issue of first impression in this court: whether the receipt of disability benefits under section 223 of the Social Security Act, 42 U.S.C.

§ 423 (1988 & Supp. V 1993),[1] establishes that one is "disabled" as a matter of law under the Federal Employees Retirement System Act of 1986 ("FERS"), § 101(a), Pub.L. No. 99–335, 100 Stat. 514, 516, *codified as amended at* 5 U.S.C. § 8451, for the purpose of determining entitlement to a FERS disability annuity. The Merit Systems Protection Board ("Board") concluded that award of Social Security disability benefits does not compel a finding of disability under FERS, and we agree.[2] We therefore hold that the Board did not err in denying a FERS disability annuity to Thomas N. Trevan ("Petitioner") notwithstanding his receipt of Social Security disability benefits. Further, under the limited review available to us in disability retirement appeals, *see Anthony v. Office of Personnel Management,* 58 F.3d 620 (Fed.Cir.1995), we find that the Board acted within the scope of *Bruner v. Office of Personnel Management,* 996 F.2d 290 (Fed. Cir.1992), and committed no reversible error in denying Petitioner's claim for FERS disability retirement. The Board's decision is therefore affirmed.

## BACKGROUND

Petitioner served as a Laborer Custodian with the United States Postal Service between 1987 and 1991. In April 1991, he applied to the Office of Personnel Management ("OPM") for disability retirement benefits under FERS, claiming that he experienced chest pains and shortness of breath following minimal exertion, and therefore had become disabled. Petitioner also asserted that he suffered from an irregular heartbeat and respiratory dysfunction.

Under the FERS statute, an employee is entitled to disability retirement if he establishes by preponderant evidence that he has completed at least eighteen months of "civilian service" and is "unable, because of disease or injury, to render useful and efficient service" in his current position and does not qualify for accommodation or reassignment. 5 U.S.C. § 8451(a)(1), (2)(A)–(B); *see Bruner v. Office of Personnel Management,* 996 F.2d 290, 294 (Fed.Cir.1992) (preponderance standard for disability determinations); *Chavez v. Office of Personnel Management,* 6 MSPB 343, 6 M.S.P.R. 404, 417 (1981) (same). In determining eligibility for benefits, OPM considers and weighs "objective clinical findings, diagnoses and expert medical opinions, and subjective evidence of pain and disability, together with all evidence relating to the effect of the [employee's] condition on his ability to perform in the position last occupied." *Chavez,* 6 M.S.P.R. at 423; *see also Thomas v. Office of Personnel Management,* 54 M.S.P.R. 686, 688–89 (1992).

Petitioner indicated on his FERS disability application that he had applied for disability benefits under the Social Security Act, 42 U.S.C. § 423, and began receiving such benefits in 1991. Such benefits are awarded when the Social Security Administration finds that an applicant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

With his FERS application, Petitioner submitted medical consultation sheets and progress notes from the hospitals treating him between 1980 and 1990, chest and lung X-rays from 1980–1981 and 1989–1990, and a 1989 electrocardiogram ("EKG") report. The hospital notes indicated treatment in 1989 and 1991 for chest pains and shortness of breath. The EKG report indicated a mitral valve prolapse, or sinking of the mitral valve into the left atrium of the heart.[3] Chest X-rays taken in 1980 and 1991 indicated no abnormalities, however, and Petitioner experienced no shortness of breath or pain during a treadmill exercise stress test conducted in 1991.

---

**1.** Unless otherwise indicated, all citations are to the 1988 edition of the United States Code.

**2.** *Trevan v. Office of Personnel Management,* 65 M.S.P.R. 406 (1994).

**3.** *See Stedman's Medical Dictionary* 1266 (25th ed. 1990).

The Postal Service assigned Petitioner light-duty work to accommodate his condition, but Petitioner stopped working in June 1991. The Postal Service removed Petitioner in September 1991 for "inability to perform his duties."

In response to Petitioner's April 1991 application for disability retirement benefits, OPM sent a letter dated November 18, 1991 requesting that Petitioner obtain further information from his physicians regarding his dyspnea (shortness of breath), chest pain, and tests performed regarding these conditions. Petitioner did not provide any further information, however, and on February 25, 1992 OPM issued an initial decision denying disability retirement.[4] Petitioner requested reconsideration, reiterating that he experienced chest pains and shortness of breath after walking normal distances. Petitioner also submitted a hospital bill for his 1991 hospitalization.

OPM issued a final denial on February 1, 1994. OPM noted that Petitioner's consultation sheets and progress notes suggested a history of cardiac arrythmia. OPM also observed, however, that Petitioner's X-ray reports were normal and found that the other medical evidence Petitioner had submitted was inadequate to establish objectively a significant cardiac and respiratory condition that prevented him from working. Specifically, Petitioner had not provided a detailed history of his condition, reports of physical or clinical findings, lab studies with objective findings, or reports of therapeutic intervention.

Petitioner appealed to the Board. The Administrative Judge (AJ) to whom the case was assigned noted that under this court's decision in *Bruner v. Office of Personnel Management,* 996 F.2d 290 (Fed.Cir.1993), Petitioner's separation from the Postal Service for inability to perform his duties established a *prima facie* case of disability, and the burden shifted to OPM to provide evi-

dence sufficient to support a finding that Petitioner was not disabled.[5] The AJ concluded that OPM had discharged its burden of production and that Petitioner had failed to carry his ultimate burden of persuasion on disability. The AJ found that certain evidence—the chest and lung X-rays and treadmill stress test results—was inconsistent with Petitioner's complaints of pain and shortness of breath following exertion. The AJ further found that Petitioner's medical evidence, particularly the hospital notes and consultation sheets, failed to analyze the EKG results, to relate those results to his complaints of chest pain and shortness of breath, to offer diagnoses or prognoses for treatment, or to explain how Petitioner was prevented from performing his duties. The AJ weighed this evidence against Petitioner's subjective claims of pain, which the AJ found to be unsupported by the objective medical evidence and inconsistent with the stress test results. Finally, the AJ found that Petitioner's receipt of Social Security Disability payments did not *per se* entitle him to a FERS disability annuity, because the standard for determining disability under the Social Security laws differs from the eligibility standard for a FERS disability annuity.

The full Board denied review and the AJ's decision, affirming OPM's denial of disability benefits, became final. 5 C.F.R. § 1201.113(b). Petitioner then appealed to this court, asserting that the Board failed to weigh properly the medical evidence of disability or to consider his receipt of disability benefits under the Social Security Act. We have jurisdiction over the appeal under 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9). *See Anthony,* 58 F.3d at 624.

## DISCUSSION

### I.

In an appeal of a Board decision denying disability retirement benefits under

4. Pursuant to regulation, OPM may require the employee to submit any additional information needed to establish disability. 5 C.F.R. § 844.203(a), (c)(1). OPM may deny a disability retirement application for failure to submit information requested by OPM. 5 C.F.R. § 844.203(a).

5. The AJ incorrectly cited to 5 C.F.R. § 831.502(b), which applies to disability retirement under the Civil Service Retirement System (CSRS), rather than § 844.103(a), which applies to disability retirement under FERS. We discern no distinction between the two regulations relevant to the issues presented in this case, however, and therefore consider the error to have been harmless.

FERS, we may not review the Board's factual determination as to whether Petitioner was disabled within the meaning of the FERS statute. *Anthony,* 58 F.3d at 626. We may consider whether there has been a "substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Id.* (internal case quotations omitted). We read Petitioner's *pro se* Informal Brief to assert that receipt of Social Security disability benefits entitles him as a matter of law to be deemed disabled for the purpose of FERS disability retirement. This question involves the proper construction of the FERS statute and is within the scope of our review.

Following the passage of the 1983 Social Security Amendments, which brought federal employees hired after December 31, 1983 within the coverage of Social Security, Congress sought to create a civil service retirement program that supplemented Social Security benefits and more closely approximated private sector multi-tiered retirement plans. *See* S.Rep. No. 99–166, 99th Cong., 1st Sess. 1–5, *reprinted in* 1986 U.S.C.C.A.N. 1405, 1405–1410. After studying the issue for a considerable period of time and assessing several proposals, Congress enacted FERS, the purpose of which was to "establish a Federal employees' retirement plan which is coordinated with title II of the Social Security Act...." Pub.L. No. 99–335, § 100A, 100 Stat. 514, 516 (1986). The FERS scheme reflects a tiered benefits system under which FERS benefits supplement baseline Social Security benefits. 5 U.S.C. § 8403 (FERS benefits payable in addition to Social Security benefits). Accordingly, disability retirement benefits payable under FERS are reduced by a statutory percentage of any Social Security disability benefit received. 5 U.S.C. § 8452(a)(2).[6]

Despite Congress' purpose of providing a coordinated system, in both this and an earlier case, *Wilmot v. Office of Personnel Management,* 35 M.S.P.R. 238 (1987), the Board

held that receipt of Social Security benefits did not *per se* establish disability under FERS. The Board arrived at this result because the standards for determining disability under the Social Security Act and regulations differ from the standard for determining disability under the civil service law and regulations. *Wilmot,* 35 M.S.P.R. at 240; *Trevan,* 65 M.S.P.R. at 406.

We do not consider persuasive the mere fact that the two standards differ, given that the definition of disability under the Social Security Act—inability to perform *any* substantial gainful activity, *see* 42 U.S.C. § 423(d)(1)(A)—is stricter than, and logically encompasses, the FERS disability definition—inability to perform useful and efficient service in the employee's present position or a reasonable reassignment, *see* 5 U.S.C. §§ 8451(a)(1)(B), 8451(a)(2)(A). The Board has recognized that the Social Security Act disability definition is "more stringent" than that of FERS. *Chavez,* 6 M.S.P.R. at 419–20; *see also Diener v. Office of Personnel Management,* 7 MSPB 396, 7 M.S.P.R. 551, 555 (1981) ("this Board has noted in Chavez ... that the standards for Social Security disability are much more strict than those of [civil service disability retirement]").

The Conference Committee Report accompanying FERS discusses two potential relationships between Social Security and FERS disability benefits determinations:

> The disability benefit is particularly complex due to the need to coordinate with Social Security benefit computation formulas and disability criteria. The Social Security definition of disability is a very strict definition. Both bills provide and the conferees concur that payment of benefits is warranted where an employee is disabled for his position (occupationally disabled) but does not qualify for Social Security benefits. As a consequence, two categories of disabled employees receive benefits. In both cases a reasonable benefit is necessary, but the benefit payable to the Social Security disabled must take into account the amount of the Social Security

---

6. OPM's regulations, and the disability benefits application form completed by Petitioner, require application for (though not award of) Social Security disability benefits prior to filing for FERS disability retirement. *See* 5 C.F.R. § 844.201(b)(1).

benefit to avoid being overly compensated. Thus, one recipient receives a benefit only from the plan while the other receives it from the plan and Social Security.

H.Conf.Rep. No. 99–606, 99th Cong., 2nd Sess. 142, *reprinted at* 1986 U.S.C.C.A.N. 1508, 1525; *see also id.* at 1524 (noting entitlement to annuity supplement for "employees who are unable to perform the duties of their positions but who do not qualify for benefits under the stricter Social Security definition of disability"; also discussing "[t]otal income flowing from both the [FERS] disability benefit and Social Security" for the totally disabled).

Thus the Report recognizes two possible categories of disability recipients: (1) a person may be "occupationally disabled," but not "totally disabled" so as to qualify for Social Security disability benefits, and thus would receive *only* disability benefits under FERS; or (2) a person may be "totally disabled" and therefore would receive both Social Security and FERS disability benefits. The Report nowhere suggests that a third category exists, comprising persons who qualify for Social Security, but not FERS, disability benefits. One might conclude from this legislative history that Congress considered an employee to be necessarily "disabled" under FERS, i.e., unable because of disease or injury to render useful or efficient service in his present position, if the Social Security Administration has determined that he is "disabled" under the Social Security Act.

However, one contrary, and compelling, aspect of the legislative history leads us to conclude that Congress did not intend an award of Social Security benefits to mandate a finding of "disability" under FERS. A Senate bill, S. 1527, that contributed substantially to the final FERS scheme, expressly defined "disabled" under FERS as meaning that an "eligible participant" either

(A) *is under a disability within the meaning of section 223 [42 U.S.C. § 423] of the Social Security Act; or* (B) is unable, because of disease or injury, to render useful and efficient service in the participant's position and is not qualified for reassignment, under procedures prescribed [OPM], to a vacant position [in the employee's

agency and commuting area, at the same grade or pay level, and in which he can render useful and efficient service].

S. 1527, Subchapter V, § 8441(4) (emphasis added); *see also* S.Rep. No. 99–166, 99th Cong., 1st Sess. 61, *reprinted at* 1986 U.S.C.C.A.N. 1405, 1466 (Senate report accompanying S. 1527). Senate bill S. 1527 defined an "eligible participant" in relevant part as an employee who

*has applied for disability benefits under the Social Security Act and has been determined to be under a disability for the purposes of title II of the Social Security Act;* or ... who has been determined ... to be disabled within the meaning of paragraph (4)(B) of this section....

S. 1527, Subchapter V, § 8441(5) (emphasis added).

The final legislation, however, omitted any language linking the definitions of "disability" under FERS and the Social Security Act, and any other indication that OPM is required or expected to defer to the Social Security Administration's disability finding. Section 8451 of the FERS statute as enacted provides that "an employee shall be considered disabled *only* if the employee is found *by the Office* [of Personnel Management] to be unable, because of disease or injury, to render useful and efficient service in the employee's position." H.R. 2672, 99th Cong., 2nd Sess. § 8451(a)(1)(B), *codified at* 5 U.S.C. § 8451(a)(1)(B) (emphasis added). The legislative history of FERS does not indicate the reason for this key change in the statute.

A House committee bill, H. 3660, was considered in conference along with S. 1527, *see* H.Conf.Rep. No. 99–606, 99th Cong., 2nd Sess. 125, *reprinted in* 1986 U.S.C.C.A.N. 1508, and contributed the language of section 8451 above. House bill H. 3660 structured the disability benefits provisions substantially differently from S. 1527 and used language similar to that of the pre-FERS Civil Service Retirement System provisions on disability retirement. Yet none of this can explain away the omission of a provision, squarely before the Conference Committee, that would have directly accomplished

coordination of FERS and Social Security benefits. Although the legislative history, both of H. 3660 and the final FERS statute, arguably reflects a belief that a finding of "total disability" establishes occupational disability under FERS, we must enforce the statute as written and are not free to ignore what appears to have been a conscious choice by Congress to permit OPM to determine disability under FERS independently of any disability benefits award under the Social Security Act.

Our conclusion is consistent with the plain language of the FERS statute, which provides that OPM will determine "questions of disability and dependency" and "adjudicate all claims under the provisions of this chapter [FERS, Chapter 84] administered by [it]." 5 U.S.C. § 8461(c)-(d). OPM may request from the Social Security Administration "such information as [OPM] determines necessary in order to administer [FERS benefits]." 5 U.S.C. § 8461(h)(1). The statute also empowers OPM to direct whatever medical or other examinations are needed to inform its decision. 5 U.S.C. § 8461(d). Once a disability annuity is granted by OPM, an annuitant whose disability is not permanent is examined "under the direction of [OPM]" each year until reaching the age of 60. Finally, under section 8455, OPM determines cessation or recurrence of disability for the purpose of terminating or reinstituting disability retirement benefits. There is no indication in either the statute or the legislative history that these provisions empower OPM only in cases in which the employee has not received Social Security benefits, or that determinations made by the Social Security Administration regarding award and continuation of Social Security disability benefits govern OPM's administration of FERS benefits.

■ Thus we conclude that the Board did not err in finding that OPM was not required to consider Appellant "disabled" under FERS, as a matter of law, based solely on his receipt of Social Security disability benefits. This is not to say, however, that receipt of Social Security disability benefits is irrelevant to a FERS disability determination. In light of Congress' express intent to coordinate FERS and Social Security benefits, OPM and the Board must consider an award of Social Security disability benefits, and any underlying medical data provided to OPM by the Social Security Administration or the employee, along with any other evidence of disability, in determining entitlement to FERS benefits. In this case, the Board considered Petitioner's receipt of Social Security benefits but found this evidence to be outweighed by the inconsistent and inadequate medical evidence provided by Petitioner. As indicated above, we may not review the Board's factual findings concerning disability or reweigh the medical evidence, and thus we do not disturb the Board's findings on this issue.

## II.

We find no legal, procedural, or similarly fundamental error in the rest of the Board's decision. The Board recognized that under *Bruner v. Office of Personnel Management*, 996 F.2d 290 (Fed.Cir.1992), Petitioner's separation for disability established a *prima facie* case of disability and shifted the burden to OPM to produce "enough evidence that a reasonable fact finder could conclude that [Petitioner] did not qualify" for disability retirement. *Id.* at 294. The Board found that OPM had satisfied its burden and concluded that Petitioner had failed to prove disability by preponderant evidence, emphasizing evidence (particularly the 1991 X-rays and treadmill stress test results) that was inconsistent with Petitioner's claim of disability, and the lack of clinical findings and other objective medical evidence supporting the claimed disabilities.

■ We agree with the Board that OPM may meet its burden of production by demonstrating a lack of objective medical evidence "provid[ing] a reasoned explanation of how certain aspects of a particular condition render the employee unable to perform specific work requirements," *Thomas v. Office of Personnel Management*, 54 M.S.P.R. 686, 689–90 (1992). *See O'Shea v. Office of Personnel Management*, 62 M.S.P.R. 352, 355 (1994) ("OPM can rightfully deny benefits if it can present proof that the appellant has insufficient objective medical evidence of dis-

ability"). Although the Board has recognized that objective medical evidence is not the only factor to be assessed in determining disability, *Chavez v. Office of Personnel Management*, 6 M.S.P.R. 404, 419, 422 (1981), it is clearly correct to consider such evidence, and the lack thereof, as probative in such determinations. Particularly when, as in this case, OPM has produced medical evidence that is inconsistent with subjective claims of disability, a reasonable fact finder could rely on a lack of objective medical evidence to the contrary in concluding that an employee is not prevented by a medical condition from working. Indeed, in many cases it may be difficult to tell when "neutral" evidence so lacks positive indication of disability that it suggests the contrary, i.e., that no disability exists. As noted above, on review that judgment is for the Board, not this court, to make.

■■■■■■ Once the Board is satisfied that a reasonable fact finder could find against the employee based on the objective medical evidence, or lack thereof, in a given case (along with any other evidence proffered by OPM),[7] the Board must weigh "the totality of the evidence produced by both sides," *Bruner*, 996 F.2d at 294. In this case the Board considered all evidence, including Petitioner's subjective claims of pain and receipt of Social Security benefits, in reaching its determination. Thus the Board followed proper procedures in determining that on the facts before it Petitioner was not entitled to a FERS disability annuity.

### CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

**AFFIRMED.**

---

7. OPM may use any information available to it, including medical and employment records submitted in the first instance by the employee or employing agency, as well as medical examinations and other information OPM directs the employee to provide. *See* 5 U.S.C. § 8461(d) (authorizing OPM to "direct at any time such medical or other examinations as it considers necessary to determine the facts concerning disability or dependence"); 5 C.F.R. § 844.203(a) (applicant is responsible for providing "whatever documentation OPM requires in order to determine whether the individual meets the eligibility requirements" for FERS disability annuity; failure to submit information is grounds for dismissing application).