# United States Court of Appeals for the Federal Circuit

---

**TRACEY DENISE GARLAND,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2024-2291

---

Petition for review of the Merit Systems Protection Board in No. DC-831E-17-0792-I-1.

---

Decided: April 22, 2026

---

CHRISTOPHER HUGH BONK, Gilbert Employment Law, PC, Silver Spring, MD, argued for petitioner. Also represented by ANDREW PERLMUTTER.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CLAUDIA BURKE, ANDREW KLOSTER, PATRICIA M. MCCARTHY, BRETT SHUMATE; EMILY WARNER, Office of General Counsel, Office of Personnel Management, Washington, DC.

---

Before TARANTO, CLEVENGER, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Tracey Garland petitions for review of the Merit Systems Protection Board's final order, affirming the Office of Personnel Management's denial of Ms. Garland's application for disability retirement. In particular, she asks us to address whether in disability retirement determinations, OPM may overcome a claimant's presumption of disability under *Bruner v. Office of Personnel Management*, 996 F.2d 290 (Fed. Cir. 1993), simply by asserting a lack of "objective" medical evidence in support of a disability determination. Because we hold an assertion of a lack of "objective" medical evidence does not on its own overcome the *Bruner* presumption, we reverse the Board's final order.

## BACKGROUND

Ms. Garland worked as a Legal Administrative Specialist in Retirement Services for the Office of Personnel Management (OPM). She was diagnosed with major depressive disorder, generalized anxiety disorder, and insomnia in 2009. For treatment of her conditions, Ms. Garland was under the care of psychiatrist Dr. Richard Greenberg. Dr. Greenberg determined Ms. Garland was unable to work starting on October 9, 2014.

In April 2015, OPM proposed Ms. Garland's removal after determining that Ms. Garland was "medically unable to perform the essential functions of [her] position." J.A. 126. "More specifically, while OPM recognize[d] that [Ms. Garland] ha[d] a disability, [her] disability substantially limit[ed] major life activities involving mental and emotional processes including thinking, concentrating, and interacting with others, all of which [were] part or all of the essential functions of [her] current or any other job within OPM." *Id.* Ms. Garland was subsequently removed from her position effective April 16, 2016. In the Removal Decision, OPM relied on medical letters from Dr. Greenberg

dated from October through December 2014, documenting Ms. Garland's symptoms.  *See* J.A. 115–16.  OPM determined Dr. Greenberg's documentation "support[ed] the statements in the notice of proposed removal and the conclusions reached by [OPM's] contract physician," namely, that Ms. Garland was medically unable to perform her position.  J.A. 115, 119.

After her removal, Ms. Garland applied for disability retirement.  OPM considered her application and concluded that she "d[id] not meet the criteria for entitlement and [was] not disabled within the meaning of the retirement law."  J.A. 85.  OPM reviewed Dr. Greenberg's documentation—the same medical letters relied on by OPM in the Removal Decision—and acknowledged that Dr. Greenberg "stressed that . . . [Ms. Garland] had difficulty concentrating and focusing" and "reiterated . . . that [Ms. Garland] suffered from situational panics, insomnia, and debilitating stomach aches all due to the stress of the work and the work environment."  J.A. 87.  However, OPM could not "determine the incapacitating extent of [Ms. Garland's] medical conditions/symptoms" due to the "lack of sufficient objective evidence in file to show the magnitude of [her] medical conditions/symptoms."  *Id.*  OPM asserted that, without such objective evidence, it "could not get a clear picture of the nature of [her] symptoms/conditions, the degree of [her] impairment, or [her] clinical course."  *Id.*

On reconsideration, OPM elaborated that Dr. Greenberg's records "failed to provide adequate medical evidence to support a disabling medical condition," and his "reports lack[ed] any specific details regarding a description of [Ms. Garland's] symptoms, results of mental status examinations, results of any neuropsychological testing that may have been performed over the years, and records pertaining to [Ms. Garland's] treatment."  J.A. 80.  Therefore, OPM "sustained the original decision to disallow [Ms. Garland's] application."  J.A. 81.

Ms. Garland appealed OPM's reconsideration decision to the Board. Before the Board, OPM argued that Ms. Garland did not qualify for disability retirement because she "did not provide the requested additional medical documentation to support her disability retirement application," and thus "no medical condition was ever established that was shown to be incompatible with useful and efficient service in her position." J.A. 193. OPM further argued that Dr. Greenberg "did not provide adequate medical evidence to support a disabling medical condition" because he "offered no evidence of testing, psychotherapy notes, list of medications, or documentation of treatment [Ms. Garland] may have undergone for her depression and anxiety during the relevant years in question." *Id.*

The administrative judge affirmed OPM's decision. J.A. 10. The administrative judge recognized that under our precedent in *Bruner*, because Ms. Garland was "[r]emov[ed] from federal service for medical inability to perform the duties of [her] position," she was entitled to a "presumption of disability that serves to shift to the government the burden of production." J.A. 15 (quoting *Bruner*, 996 F.2d at 294). The administrative judge then noted OPM "indicated that [Ms. Garland] had failed to file medical records sufficient to support her claims." J.A. 16 (citing J.A. 90). The administrative judge also cited OPM's medical reviewer's statements that Ms. Garland "failed to file any supporting medical documentation":

No medical record at all was found in this case file. Not even one page, so no records were found showing the applicant's diagnosis and progress in treatment. The severity of any impairment was unsupported by mental function measurements. No prognosis for any occupational impairment was supported due to the absence of any medical records. No medical condition of any kind was supported by the information in this case file because no medical records were there. My assignment was

> to describe the occupational health status of the applicant as documented on the medical records on file. Since there was none, I cannot complete that assignment. I have no medical factual basis to recommend acceptance of this claim, as there were no medical facts to base it on.

J.A. 16 (quoting J.A. 94). Relying on OPM's medical reviewer's statements, as well as OPM's conclusion that "there were no current supporting objective records provided to show" that Ms. Garland's medical conditions caused disablement, the administrative judge found that OPM met "its burden of production to rebut the *Bruner* presumption so that the Board must weigh the totality of the evidence produced by both sides to determine if [Ms. Garland] is entitled to disability retirement benefits." *Id.* (citing *Trevan v. Off. of Pers. Mgmt.*, 69 F.3d 520, 527 (Fed. Cir. 1995)). With the *Bruner* presumption overcome, the administrative judge considered the totality of the evidence and found Ms. Garland had "not presented preponderant evidence to show that she suffers an inability to render useful and efficient service," affirming OPM. J.A. 24. The Board affirmed the initial decision, making it the Board's final decision. *Garland v. Off. of Pers. Mgmt.*, No. DC-831E-17-0792-I-1, 2024 WL 3311319, at *1 (M.S.P.B. July 3, 2024).

Ms. Garland petitions for review.

## DISCUSSION

As a threshold issue, we first address our court's jurisdiction to hear Ms. Garland's petition. Once satisfying ourselves of jurisdiction, we provide an overview of three decisions that guide our analysis of the sole issue in this appeal: *Bruner, Trevan*, and *Vanieken-Ryals*. Finally, we discuss the merits of Ms. Garland's petition.

I

As a threshold issue, we first address our jurisdiction. Our jurisdiction to review OPM disability determinations is restricted by 5 U.S.C. § 8347 and the Supreme Court's interpretation of that statute in *Lindahl v. Office of Personnel Management*, 470 U.S. 768 (1985). "Under that statute as interpreted in *Lindahl*, factual determinations on 'questions of disability and dependency' are unreviewable by this or any other court." *Vanieken-Ryals v. Off. of Pers. Mgmt.*, 508 F.3d 1034, 1038 (Fed. Cir. 2007). Issues of law, however, are reviewable. *Id.* "[Judicial] review is available to determine whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Id.* (alteration in original) (quoting *Lindahl*, 470 U.S. at 791). Thus, we may address Ms. Garland's argument that the Board made a critical legal error in reviewing OPM's decision. *See id.*; *see* Pet. Br. 10 ("Ms. Garland contends that OPM has imposed and relied upon, and the [Board] affirmed, an impermissible objective medical evidence requirement in rebutting the presumption of disability under *Bruner*.").

Ms. Garland argues before us that the administrative judge erred by holding that the *Bruner* presumption is overcome by OPM's argument that Ms. Garland failed to introduce objective medical evidence. We review this legal issue de novo, "keeping in mind that the [Board's] decision sustaining OPM's actions may only be reversed if it is arbitrary or capricious, or if it is contrary to law." *Vanieken-Ryals*, 508 F.3d at 1040 (citing 5 U.S.C. § 7703(c)).

II

Our decisions in *Bruner*, *Trevan*, and *Vanieken-Ryals* govern and inform our analysis in this case. We discuss each in turn.

In *Bruner*, we held that when a government agency separates a claimant from service due to disability, it creates an "evidentiary presumption which serves to shift the burden of coming forward to the government." 996 F.2d at 293–94. "That is, the applicant is deemed to have met his burden of proof *prima facie*. The burden of production then shifts to the government, to come forward with evidence sufficient to support a finding that the applicant is not disabled . . . ." *Id.* at 294. However, the burden of proof still remains with the claimant, even though the agency's determination of disability shifts the burden of production. *See id.* ("We do not hold that the ultimate burden of proof is shifted when the agency has separated the employee based on the agency's determination of disability, for we do not think that the presumption of disability based on agency action warrants this force."). We summarized the burden shifting framework as follows:

> [T]he government's action in separating an employee for disablement produces a presumption of disability that serves to shift to the government the burden of production. The government must come forward with enough evidence that a reasonable fact finder could conclude that the applicant did not qualify [for disability retirement under 5 C.F.R. § 831.1203].[1] Thus the initial presumption in favor of the claimant will control the result only in cases where the government does not introduce evidence sufficient to support a finding in its favor; in such cases, an applicant who has been dismissed for physical disqualification and absence of an alternative position will generally prevail. However,

---

[1]    *Bruner* cites to 5 C.F.R. § 831.502(b) (1993), which has been replaced by 5 C.F.R. § 831.1203. While "[t]hese two regulations are not exactly the same, . . . the relevant portions are substantively similar." Resp. Br. 15 n.2.

> if the government's evidence is sufficient to support a finding that the applicant is not entitled to disability retirement . . . , the totality of the evidence produced by both sides is weighed by the trier of fact, who may (but need not) infer disability from the facts giving rise to the presumption. The applicant, who retains the burden of persuasion, will then prevail only if he/she establishes entitlement by a preponderance of the evidence.

*Id.* (citations omitted).

In *Trevan*, we elaborated on one way that OPM might meet its burden of production to overcome the *Bruner* presumption: "by demonstrating a lack of objective medical evidence 'provid[ing] a reasoned explanation of how certain aspects of a particular condition render the employee unable to perform specific work requirements.'" 69 F.3d at 526 (alteration in original) (citation omitted). There, the employing agency removed the claimant for "inability to perform his duties," thus entitling the petitioner to the *Bruner* presumption and shifting the burden of production to OPM. *Id.* at 523. Importantly, the administrative judge determined OPM met its burden of production by providing objective medical evidence, in the form of X-rays and treadmill stress test results, that was "inconsistent with" the petitioner's claim of disability. *See id.* The Board affirmed the administrative judge's decision, and we affirmed the Board. *Id.* at 523, 526–27.

In our decision, we emphasized the Board's reliance on medical "evidence . . . that was inconsistent with [the claimant's] claim of disability, and the lack of clinical findings and other objective medical evidence supporting the claimed disabilities." *Id.* at 526. We further noted that while "objective medical evidence is not the only factor to be assessed in determining disability, . . . it is clearly correct to consider such evidence, and the lack thereof, as probative in [disability] determinations," "[p]articularly

when . . . OPM has produced medical evidence *that is inconsistent with subjective claims of disability*." *Id.* at 527 (emphasis added) (citation omitted). When presented with objective medical evidence inconsistent with or contradicting a subjective claim of disability, "a reasonable fact finder could rely on a lack of objective medical evidence to the contrary in concluding that an employee is not prevented by a medical condition from working," particularly because "in many cases it may be difficult to tell when 'neutral' evidence so lacks positive indication of disability that it suggests the contrary, i.e., that no disability exists." *Id.*

In *Vanieken-Ryals*, a case where the *Bruner* presumption was not at issue, we addressed whether OPM and the Board can require a claimant to provide "objective" medical evidence to meet the claimant's ultimate burden of persuasion for disability retirement. 508 F.3d at 1040–44. There, the claimant had been diagnosed with "generalized anxiety disorder, panic attack disorder without agoraphobia, and major depression." *Id.* at 1037. The claimant submitted evidence to OPM "consist[ing] of her own statements in addition to several letters, medical reports, and related documentation from her treating psychologist, Dr. Nichols, and treating psychiatrist, Dr. Rummler." *Id.* at 1036. Before the Board, the claimant "additionally submitted testimony from herself and her husband, as well as testimony from Dr. Nichols. OPM offered no medical evidence countering Dr. Nichols' and Dr. Rummler's documents or testimony." *Id.* The Board affirmed OPM's determination that the claimant failed to prove her disability, and the Board and OPM "gave no weight at all to [the claimant's] medical evidence." *Id.* at 1038. The Board's "holding was largely based on [its] rejection of [the claimant's] medical evidence and its view that she had failed to prove any disability beyond an inability to work with her particular supervisor." *Id.*

We vacated and remanded the Board's decision because it "applied an erroneous legal standard" that was

"predicated on its view that 'objective' medical evidence is required to prove disability." *Id.* at 1036, 1039. In so holding, we highlighted the administrative judge's conclusion "that Dr. Nichols' reports were necessarily immaterial since they were 'subjective' in that they were primarily based on Dr. Nichols' assessment of [the claimant's] own account of her symptoms and experiences." *Id.* at 1039. And upon review of the record, we determined the Board's order gave "absolutely no weight . . . to certain evidence solely because it c[ould] generally be classified as 'subjective' and not because of any specific identifiable defect," which amounted to "[d]isqualification" of that evidence. *Id.* at 1040. Such disqualification, we held, is unlawful, since the OPM regulation defining the type of medical documentation required to establish disability did not "hint of any objective/subjective distinction." *Id.* at 1041. So a claimant "may prevail based on medical evidence that . . . consists of a medical professional's conclusive diagnosis, even if based primarily on his/her analysis of the applicant's own descriptions of symptoms and other indicia of disability." *Id.* And we highlighted the particular problem with requiring "'objective' tests" in instances where "the alleged disability arises from purely psychological, as opposed to physical, disorders," because psychological disorders differ from physical ones in the ways they are diagnosed and documented. *Id.* at 1042. Accordingly, we held it is "legal error" for OPM or the Board "to reject submitted medical evidence as entitled to no probative weight at all solely because it lacks so-called 'objective' measures such as laboratory tests." *Id.*

Further, we distinguished *Vanieken-Ryals* from the circumstances in *Trevan*. We concluded that *Trevan* was inapposite from *Vanieken-Ryals* because in *Trevan*, "the [Board] and OPM did not err by relying on a lack of objective medical evidence supporting a claim of disability when 'OPM has produced [objective] medical evidence [such as X-rays] that is inconsistent with subjective claims of

disability.'" *Vanieken-Ryals*, 508 F.3d at 1042 n.7 (quoting *Trevan*, 69 F.3d at 526–27) (second and third alterations in original). And the Board's comparison in *Trevan*, deeming "subjective evidence . . . to be less probative than *contrary objective evidence*," differed from the Board's analysis in *Vanieken-Ryals*, where "the *only* medical evidence [was] the so-called 'subjective' evidence submitted by" the claimant. *Id.* (first emphasis added).

### III

Turning to the case before us, we hold that OPM may not satisfy its burden of production under *Bruner* by simply asserting a lack of objective medical evidence. To reach this holding, we apply our reasoning from *Vanieken-Ryals* to cases where the *Bruner* presumption applies. While a claimant for disability benefits "is not absolved of coming forward with evidence and argument in rebuttal of any evidence of absence of entitlement adduced by [OPM], [OPM] must first meet its burden of producing sufficient evidence to support a finding that" the claimant does not qualify for disability benefits. *Bruner*, 996 F.2d at 294. *Vanieken-Ryals* makes clear that in disability retirement applications, "any evidence—'subjective' or otherwise—utilizing 'established diagnostic criteria' and consistent with 'generally accepted professional standards' is eligible for consideration." 508 F.3d at 1041. And a legal error occurs when OPM and the Board give a claimant's evidence "no probative weight . . . solely because it lack[ed] so-called 'objective' measures such as laboratory tests." *Id.* at 1042.

Considering the holdings and reasoning from both *Bruner* and *Vanieken-Ryals*, OPM cannot "meet its burden of producing sufficient evidence to support a finding that the requirements" for disability retirement are not met by the claimant, and thus overcome the *Bruner* presumption, by simply asserting the evidence provided by the claimant in a disability retirement application is deficient "because it lacks so-called 'objective' measures." *Bruner*, 996 F.2d

at 294; *Vanieken-Ryals*, 508 F.3d at 1042. Here, the Board's sole basis for its conclusion that OPM met its burden of production was OPM's assertion that Ms. Garland's medical documentation was insufficient to support her claims due to the lack of "current supporting objective records provided to show" her conditions caused disablement. J.A. 16; *see also id.* (citing OPM's medical reviewer stating "[t]he severity of any impairment was unsupported by mental function measurements" (citations omitted)). The Board therefore erred in its analysis.

To be clear, OPM may rely on a "lack of objective medical evidence" when it is a *part* of OPM's effort to meet its burden of production under *Bruner*, but the "lack of objective medical evidence" may not be its sole assertion. This is demonstrated by our decision in *Trevan*. There, we recognized that in cases where "OPM has produced medical evidence that is inconsistent with subjective claims of disability, a reasonable fact finder could rely on a lack of objective medical evidence *to the contrary* in concluding that an employee is not prevented by a medical condition from working," thus satisfying OPM's burden of production under *Bruner*. *Trevan*, 69 F.3d at 527 (emphasis added). While OPM argues its reliance on a lack of "objective" evidence is permissible under *Trevan*, Resp. Br. 20, we do not hold that OPM and the Board erred by relying on the lack of "objective" evidence *at all* in rebutting the *Bruner* presumption. Rather, we hold that OPM and the Board erred by *solely* relying on the lack of "objective" evidence. *See Vanieken-Ryals*, 508 F.3d at 1042 n.7 ("[I]n *Trevan*[,] . . . we held that the [Board] and OPM did not err by relying on a lack of objective medical evidence supporting a claim of disability when 'OPM has produced [objective] medical evidence [such as X-rays] that is inconsistent with subjective claims of disability.'" (fourth and fifth alterations in original)).

OPM also argues before us that it "rebutted the [*Bruner*] presumption based on a showing that

Ms. Garland failed to produce *any* medical evidence of disablement (not just evidence categorized as 'objective')." Resp. Br. 17.  We disagree with OPM's characterization of the record.  OPM's initial decision credited Dr. Greenberg's reports that Ms. Garland "had difficulty concentrating" and "suffered from situational panics, insomnia, and debilitating stomach aches all due to the stress of the work and the work environment," but OPM stated that without "sufficient *objective* evidence . . . to show the magnitude of [Ms. Garland's] medical conditions/symptoms," it could not "determine the incapacitating extent" of her conditions. J.A. 87 (emphasis added).  And before the Board, OPM contended Dr. Greenberg's medical evidence was inadequate because Dr. Greenberg "offered no evidence of testing, psychotherapy notes, list of medications, or documentation of treatment [Ms. Garland] may have undergone."  J.A. 193 (citations omitted).  The Board ultimately based its decision on the lack of "current supporting objective records," such as the absence of "mental function measurements." J.A. 16 (citations omitted).  Based on our precedent as discussed above, this was error.

Finally, OPM argues that even if the Board's reliance on the lack of "objective" evidence was error, such error was harmless because the administrative judge weighed the totality of the evidence.  Resp. Br. 23.  But this line of argument would eviscerate the *Bruner* presumption.  Under *Bruner*, the Board only weighs the totality of the evidence once OPM meets its burden to "introduce evidence sufficient to support a finding in its favor."  996 F.2d at 294. Otherwise, "the initial presumption in favor of the claimant will control the result" of the case.  *Id.*  The Board's impermissible reliance on the lack of "objective" evidence as the reason to determine OPM met its burden of production was not harmless because it resulted in overcoming a presumption in Ms. Garland's favor that otherwise controlled the outcome of her case.  *See id.*

Accordingly, because both OPM's argument before the Board and the Board's final decision were based on the lack of "objective" medical evidence provided by Ms. Garland, OPM did not rebut Ms. Garland's presumption of disability. And due to Ms. Garland's unrebutted presumption of disability, we determine Ms. Garland is entitled to disability retirement benefits.

CONCLUSION

We have considered OPM's remaining arguments and find them unpersuasive. For the foregoing reasons, we reverse the Board's final order.

**REVERSED**