# United States Court of Appeals for the Federal Circuit

2006-3260

PHYLLIS M. VANIEKEN-RYALS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

John S. Grady, Grady & Hampton LLC, of Dover, Delware, argued for petitioner.

Michael S. Dufault, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Assistant Director. Of counsel was Tara K. Hogan, Trial Attorney.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2006-3260


PHYLLIS M. VANIEKEN-RYALS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.


_____

DECIDED:  November 26, 2007

_____


Before MICHEL, Chief Judge, LOURIE and MOORE, Circuit Judges.

MICHEL, Chief Judge.

Phyllis M. Vanieken-Ryals appeals from a final decision of the Merit Systems Protection Board ("MSPB") sustaining the denial of her application for disability retirement benefits by the Office of Personnel Management ("OPM").  Vanieken-Ryals v. Office of Pers. Mgmt., No. PH-831E-05-0450-I-1 (M.S.P.B. May 15, 2006).  Because OPM applied an erroneous legal standard in its assessment of evidence offered to support Vanieken-Ryals' application, and the MSPB repeated that error, we vacate and remand.

## I.    BACKGROUND

Vanieken-Ryals has been an employee of the Veterans Administration ("VA") for nearly thirty years.  In the several years prior to February 2004, she experienced

increasing discomfort and difficulties at her workplace and particularly with her immediate supervisor, Barry Emerson. On February 23, 2004, Emerson instructed her to switch offices to one near his. This prompted her to immediately apply for voluntary early retirement. Emerson informed her the next day, February 24, 2004, that he was recommending her application be denied. She did not return to work the next day, and she has been absent from work ever since. The VA formally denied her early retirement application on March 3, 2004. On June 25, 2004, she filed the application for disability retirement at issue in this appeal. OPM denied that application on January 12, 2005. After permitting Vanieken-Ryals to submit additional evidence, OPM reconsidered and sustained its decision on May 9, 2005. Vanieken-Ryals appealed to the MSPB, and the administrative judge ("AJ") sustained OPM's reconsideration decision. Vanieken-Ryals v. Office of Pers. Mgmt., No. PH-831E-05-0450-I-1 (M.S.P.B. Nov. 14, 2005) ("AJ Decision"). The MSPB denied Vanieken-Ryals' petition for rehearing on May 15, 2006, thereby making the AJ's decision its final decision, which Vanieken-Ryals then timely appealed to this court.

Vanieken-Ryals claims complete disability due to several alleged psychological disorders, including major depression and anxiety disorder. The evidence she submitted to OPM to support her claim consisted of her own statements in addition to several letters, medical reports, and related documentation from her treating psychologist, Dr. Nichols, and treating psychiatrist, Dr. Rummler. Before the MSPB, Vanieken-Ryals additionally submitted testimony from herself and her husband, as well as testimony from Dr. Nichols. OPM offered no medical evidence countering Dr. Nichols' and Dr. Rummler's documents or testimony.

In her statements to OPM, Vanieken-Ryals alleged that the stresses of her job in the months leading up to January 2004 resulted in, among other things, severe anxiety and panic attacks, vomiting, and nausea. Pet. App. at 167-68. She also indicated that, by January 2004, she "could no longer manage to drive [her]self to work," and that she would experience "sheer panic when forced to leave the house." Id. She further indicated that, after her meeting with her superior on February 24, 2004, she "suffered a total mental meltdown." Id. at 169. She also described the symptoms she has experienced since she stopped attending her job, such as "chest pains, heart palpitations," nausea, irritability, inability to drive, "deep depressive moods," difficulty with "simple basic hygiene" and "routine household chores" like laundry or cooking, and general and severe fear and anxiety in dealings with people and/or places at all connected or related to the VA. Id. at 169-71.

Her testimony before the MSPB was consistent with her statements to OPM; she testified that the act of being driven to work by her husband would cause nausea and vomiting, that leaving her house would trigger panic attacks, that she suffered from depression, and that she had been prescribed multiple medications for her mental conditions. Id. at 54, 59-61, 65, 73. Her husband, James Ryals, also testified before the MSPB, corroborating his wife's testimony on her symptoms. Id. at 76-77, 79-81.

Dr. Nichols submitted a number of letters and medical reports dated from May 12, 2004, to February 8, 2005. She also submitted progress notes dated from as early as March 15, 2004. In these documents, she consistently diagnosed Vanieken-Ryals with generalized anxiety disorder, panic attack disorder without agoraphobia, and major

depression, all "Axis I" psychological disorders.[1]  Id. at 149-50, 152-58.  She described in detail the symptoms reported by Vanieken-Ryals and her husband as well as those she herself observed during treatment.  Id. at 149, 152, 154.  She indicated her opinion that Vanieken-Ryals "is a reliable reporter of her situation."  Id. at 152.  She described particular aspects of Vanieken-Ryals' condition that reflected specifically on her capability to accomplish the tasks of her position; for example, Dr. Nichols wrote on February 8, 2005, that Vanieken-Ryals "is unable to drive or be driven north or to set foot in the VA building" and that merely receiving correspondence from the VA rendered her "extremely anxious and depressed and unable to leave the couch for days."  Id. at 149.  Dr. Nichols also opined on Vanieken-Ryals' prognosis, reporting that aside from small improvements in personal hygiene and like tasks, "her date of recovery, if she has to return to work, is far in the future, if ever."  Id. at 156.  In mid-2004, Dr. Nichols did indicate, without specifying, that "[p]rognosis is good" and that Vanieken-Ryals "is making progress in therapy," but emphasized that she remained unfit to return to work. Id. at 157-58.  And Dr. Nichols' final report in February 2005 indicated that Vanieken-Ryals "most likely will be unable to return to work at all" and that Dr. Nichols "does not believe an accommodation is feasible."  Id. at 149.

Dr. Nichols also gave oral testimony before the MSPB.  She testified that she "did see that [Vanieken-Ryals] had anxiety and depression," and that she directly observed signs of mental illness such as having a "flat" affect and being "very fidgety."  Id. at 30, 32, 36.  She described particular episodes and manifestations of Vanieken-Ryals' panic

---

[1]  Dr. Nichols applied the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), a widely-accepted tool for psychological diagnosis published by the American Psychiatric Association.  "Axis I" disorders are among the most severe of the disorders for which DSM-IV is used.

attacks and depression, and discussed the limited progress achieved by Vanieken-Ryals' treatment, such as an improved ability to maintain personal hygiene. Id. at 30, 33-36. Dr. Nichols testified several times that she at no time felt that Vanieken-Ryals was fit for work, and that Vanieken-Ryals "will not ever be able to return to the VA" and likely "will never be able to return to [any] work, full time." Id. at 30, 34, 38. She also testified that the standard diagnostic tool in the mental health field is DSM-IV, and that she had used DSM-IV to diagnose Vanieken-Ryals. Id. at 36.

Dr. Rummler, whom Dr. Nichols indicated was prescribing Xanax and other psychiatric medication, id. at 152-54, provided a brief letter dated March 25, 2005, indicating that he had been treating Vanieken-Ryals since April 2004 and that he had diagnosed her with major depression and anxiety disorder. Id. at 151. He further indicated his opinion that "[d]ue to the intensity of symptoms attributable to work related stress, it can also be stated with reasonable medical certainty that Mrs. Vanieken-Ryals will be unable to return to her previous work at any time in the future." Id. He also submitted notes of his treatment of Vanieken-Ryals from April 2004 through June 2005. Id. at 135-42.

Both OPM and the MSPB gave no weight at all to Vanieken-Ryals' medical evidence and then found that she had failed to prove her disability. The MSPB also held that she had not "definitively exhausted" the possibility that the agency could accommodate her alleged disability. AJ Decision at 16. This holding was largely based on the MSPB's rejection of her medical evidence and its view that she had failed to

prove any disability beyond an inability to work with her particular supervisor.[2] The record shows that Vanieken-Ryals was offered "temporary duty away from work area and supervisor," which she turned down due to her medical condition. Id. at 9-10. However, the record also indicates that the VA determined: "Reassignment is not possible. There are no vacant positions at this agency, at the same grade or pay level and tenure within the same commuting area, for which the employee meets minimum qualification standards." Id. at 10.

## II. DISCUSSION

### A. Jurisdiction

As a threshold issue, we first address whether this court has jurisdiction to hear Vanieken-Ryals' appeal due to 5 U.S.C. § 8347. While we have exclusive jurisdiction over appeals from a final decision of the MSPB under 28 U.S.C. § 1295(a)(9), the scope of review available regarding OPM disability determinations is restricted by § 8347 and by the Supreme Court's decision in Lindahl v. Office of Pers. Mgmt., 470 U.S. 768 (1985). Under that statute as interpreted in Lindahl, factual determinations on "questions of disability and dependency" are unreviewable by this or any other court. See 5 U.S.C. § 8347; Lindahl, 470 U.S. at 779-80; Anthony v. Office of Pers. Mgmt., 58 F.3d 620, 625-26 (Fed. Cir. 1995).

The Court made clear, however, that issues of law regarding decisions on disability applications are reviewable: "[Judicial] review is available to determine whether there has been a substantial departure from important procedural rights, a

---

[2]    The AJ, however, noted in his decision that he was "aware that the continuing position of both [Vanieken-Ryals] and Dr. Nichols is that [Vanieken-Ryals] can not work again at all" and that were Dr. Nichols' conclusions correct, "a reassignment could prove fruitless." AJ Decision at 16.

misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." Lindahl, 470 U.S. at 791 (quoting Scroggins v. United States, 397 F.2d 295, 297 (Ct. Cl. 1968)) (internal quotations omitted). Thus we may only address the critical legal errors, if any, committed by the MSPB in reviewing OPM's decision. Vanieken-Ryals contends that both the MSPB and OPM committed an error of law by entirely rejecting all of her medical evidence simply due to the absence of so-called "objective" medical evidence, arguing that such a requirement is unlawful and not supported by any statute, regulation, or precedent. The government argues that no such requirement was imposed and that the MSPB (and OPM) simply found the medical evidence insufficient to establish disability as a factual matter.

We conclude, however, that the MSPB's decision was indeed predicated on its view that "objective" medical evidence is required to prove disability and that Vanieken-Ryals had failed to meet this requirement, affirming and expressly approving of OPM's holding to this effect. This is evident upon close examination of all three written decisions in this case. In OPM's initial decision of January 12, 2005, the agency criticized the evidence submitted by Vanieken-Ryals because "[a]part from [Vanieken-Ryals'] subjective narrative, no other objective medical documentation was provided supporting a history that may have contributed to [her] sudden mental demise." App. to Resp. Br. at 31 (emphasis added). OPM then elaborated, criticizing the lack of "documentation such as emergency room reports showing incidents of panic attack" and "relevant psychiatric studies or test results." Id.

In its later May 9, 2005 reconsideration decision, OPM further expressed its view that the critical defect in Vanieken-Ryals' evidence was the lack of so-called objective

medical documentation. OPM indicated it was giving no weight to Dr. Nichols' several reports because "she provided no details concerning any mental status evaluation," and "she does not provide copies of any formal cognitive testing." Pet. App. at 145. OPM later repeated that the case file "contains no evidence of any formal cognitive or neuropsychological testing," and also cited the lack of "any comprehensive physical examinations" and "any current comprehensive mental status evaluations." Id. at 146.

The MSPB in turn enforced OPM's "objective" medical evidence requirement. In his opinion, the AJ pointed to OPM's finding that Vanieken-Ryals had provided "little objective medical evidence . . . to demonstrate that [she] is disabled." AJ Decision at 13 (emphasis added). He further noted that "OPM also points out that the bulk of the evidence presented by [Vanieken-Ryals] is Dr. Nichol's [sic] reports of what [Vanieken-Ryals] told her." Id. This latter point was relied on by the AJ in his own analysis, and he remarked that "the evidence presented by Dr. Nichols is only as good as the information given to her by [Vanieken-Ryals]." Id. Thus the AJ also concluded that Dr. Nichols' reports were necessarily immaterial since they were "subjective" in that they were primarily based on Dr. Nichols' assessment of Vanieken-Ryals' own account of her symptoms and experiences. The AJ made this apparent when he declared that "[t]he only evidence which supports [Vanieken-Ryals'] claim of disability is her protracted absence form [sic] work," and emphasized that "the necessity of the absences is based on purely subjective medical evidence, which are not supported by an [sic] objective medical evidence." Id. at 17 (emphases added). Clearly, the AJ totally discounted any probative value that Vanieken-Ryals' medical evidence might have to support her claim of disability since the only evidence he credited was her attendance record (which he

then also rejected for being based on "purely subjective medical evidence"). His treatment of the medical evidence was thus tantamount to exclusion; he "considered" Dr. Nichols' and Dr. Rummler's evidence but only so far as deciding to disregard it as not at all probative as to her disability.[3]

The Supreme Court in Lindahl, by expressly rejecting that the MSPB and OPM are not subject to any judicial review on any issue, indicated that the courts have a limited but important role to play. Both to guard against the substantial errors of law and resulting miscarriage of justice described in Scroggins, and to properly respect our jurisdictional limitations on truly factual determinations, we must be discerning and cannot be satisfied by opinions that invoke the trappings of factual analysis—e.g., by vaguely describing broad swaths of evidence as "insufficient" or as failing to carry the claimant's burden, or simply asserting that all record evidence was considered, all of which the AJ and OPM did here—but, when read closely and carefully, reveal that absolutely no weight was given to certain evidence solely because it can generally be classified as "subjective" and not because of any specific identifiable defect. Giving little weight to specific evidence because of its individual failings, such as the lack of qualifications of the author of a particular medical report, is a factual analysis over which we have no jurisdiction to review. Disqualification of evidence because of its type is an

---

[3] Thus the AJ's conclusion that Vanieken-Ryals had failed to "adduce sufficient probative medical evidence that the medical conditions from which she suffers disables her from performing the duties of her position" does not truly evidence a factual analysis since it is predicated on the view that none of Vanieken-Ryals' medical evidence warranted any probative weight. See AJ Decision at 17. With this evidence essentially excluded, she of course had not adduced sufficient, or indeed any, probative medical evidence. OPM's conclusion, that the record "contains insufficient medical documentation regarding the level of any medical impairment in context to [Vanieken-Ryals'] ability to perform the duties and responsibilities of [her] job," is based on the same premise and is similarly unconvincing. See Pet. App. at 147.

imposition of a legal standard because it inherently imposes a categorical requirement. When the use of such a standard is dispositive of disability retirement claims, they go to the heart of the administrative determination, and we are charged with resolving whether the imposed standard and its inherent evidentiary requirement are lawful.

Therefore, we hold that our jurisdiction is established as to the issue of whether the imposition of an objective medical evidence requirement by the MSPB (or OPM) in disability retirement cases is lawful or "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination."[4]  Scroggins, 397 F.2d at 297. We now turn to this issue of law, which we review de novo, keeping in mind that the MSPB decision sustaining OPM's actions may only be reversed if it is arbitrary or capricious, or if it is contrary to law.[5]  See 5 U.S.C. § 7703(c).

### B.    Objective Medical Evidence Requirement

It is telling that no authority whatsoever is cited by the MSPB or OPM, in any of the three written decisions in this case, for the proposition that objective medical evidence is required to prove disability.  No statute or applicable regulation of which we are aware imposes such a requirement.  In fact, applicable law suggests the opposite rule.   OPM's regulations define the type of "medical documentation" required to establish disability.  Such evidence must come from "a licensed physician or other

---

[4]     We do not, however, review the MSPB's treatment of the non-medical evidence, such as her performance evaluations and the testimony of her supervisor. Both the MSPB and OPM seem to have considered and weighed this evidence.  But this does not bear on whether the MSPB or OPM effectively imposed an objective medical evidence requirement.

[5]     While we may also reverse an MSPB decision if it is unsupported by substantial evidence, our limited review of legal issues only in OPM disability cases does not implicate the substantial evidence standard.

appropriate practitioner," it must "be justified according to established diagnostic criteria," and it must "not be inconsistent with generally accepted professional standards." 5 C.F.R. § 339.104; see 5 C.F.R. § 831.1202 (requiring medical evidence submitted to support an application for disability retirement to conform to the requirements of 5 C.F.R. § 339.104). There is no hint of any objective/subjective distinction, and the regulation clearly indicates that any evidence—"subjective" or otherwise—utilizing "established diagnostic criteria" and consistent with "generally accepted professional standards" is eligible for consideration.

Moreover, the MSPB has even precedentially ruled squarely against an objective evidence requirement. Chavez v. Office of Pers. Mgmt., 6 M.S.P.R. 404, 418-23 (1981) ("[The AJ] erred in assuming that appellant's claim for disability retirement benefits could not be granted if it was not proven by objective medical evidence.").[6] While we are not bound by the MSPB's precedent, we agree with and accept the Chavez holding on this issue. OPM must consider all of an applicant's competent medical evidence, and an applicant may prevail based on medical evidence that, as here, consists of a medical professional's conclusive diagnosis, even if based primarily on his/her analysis of the applicant's own descriptions of symptoms and other indicia of disability. See id. at 423 ("Objective medical evidence, then, is but one of the elements of proof to be considered, along with expert opinion evidence and subjective evidence of pain and inability to work . . . .").

---

[6] We note that the AJ cited and quoted from Chavez at the beginning of his opinion, and thus his later disregard for one of its central holdings is very puzzling. An AJ is, of course, bound by all precedents of the MSPB.

For example, in Craig v. Office of Pers. Mgmt., 92 M.S.P.R. 449, 454-55 (2002), the MSPB held that the applicant satisfied her burden of proving her disability solely with medical evidence from a psychiatric social worker along with her own testimony. The social worker, a licensed mental health specialist, diagnosed her patient with multiple mental disorders, including post-traumatic stress disorder and panic disorder. Id. at 452. Much like in the instant case, the social worker's reports were solely based on information she heard or observed during therapy sessions after the applicant had already left the job that had precipitated her conditions. See id. Also like Dr. Nichols, the social worker in Craig based her diagnosis on the guidelines in DSM-IV. Id. at 455. There is no mention of any "objective" tests in Craig; rather, the medical evidence there deemed highly probative was very similar to the medical evidence petitioner submitted here. The MSPB's total disregard of this evidence due to a lack of "objective" tests thus ignores its own precedents.

In addition, subjective evidence—i.e., testimony or written statements—regarding symptoms that is submitted by the applicant "may be entitled to great weight on the matter of disability, especially where such evidence is uncontradicted in the record." Chavez, 6 M.S.P.R. at 418-422; see also Biscaha v. Office of Pers. Mgmt., 51 M.S.P.R. 304, 309 (1991) ("An appellant's subjective evidence of pain must be considered seriously, where it is supported by competent medical evidence."). It stands to reason that qualified medical opinions based on the same types of information must therefore also be afforded at least comparable, if not greater, probative weight. While the ultimate determination of whether the evidence has satisfied the applicant's burden of proof rests first with OPM and then with the MSPB, we hold that it is legal error for either agency to

reject submitted medical evidence as entitled to no probative weight at all solely because it lacks so-called "objective" measures such as laboratory tests.

The problem with a requirement of "objective" tests is particularly pronounced when, as here, the alleged disability arises from purely psychological, as opposed to physical, disorders. No laboratory tests or physical examinations exist, or are even known to be possible, to diagnose some psychological disorders. See Chavez, 6 M.S.P.R. at 418. And the practice of psychologists often consists entirely of professional assessment of patient-reported symptoms and experiences. Thus, requiring objective medical evidence would often discriminate against those civil servants who suffer from legitimate, disabling psychological disorders.

Here, Dr. Nichols submitted several reports in which she diagnosed Vanieken-Ryals with severe psychiatric conditions, recounting the symptoms and experiences reported by Vanieken-Ryals that formed the basis of her diagnosis. Inherent in these reports is her professional opinion that Vanieken-Ryals' account of these symptoms is credible, and that the symptoms reported are serious. Indeed, she stated explicitly that, in her professional opinion, Vanieken-Ryals was a "reliable reporter of her situation." Pet. App. at 152. And her professional opinion was supplemented and supported by the opinion of a second medical professional, psychiatrist Dr. Rummler, who concurred with Dr. Nichols' diagnosis and went further to prescribe medications, evidence of which was submitted to OPM. In cases involving psychological disability, such evidence is typically probative (though not necessarily dispositive). See, e.g., Craig, 92 M.S.P.R. at 454-55 (crediting similar medical opinion testimony from a psychiatric social worker).

While OPM and the MSPB may give only limited weight to seemingly strong medical evidence such as this, it typically does so only in the face of factors such as doubts about professional competence, contrary medical evidence, failure of the professional to consider relevant factors, lack of particularity in relating diagnosis to nature and extent of disability, etc.[7]  See Thomas v. Office of Pers. Mgmt., 54 M.S.P.R. 686, 689-90 (1992) (comparing and weighing conflicting medical opinions on the basis of qualifications and competence); Bridges v. Office of Pers. Mgmt., 21 M.S.P.R. 716, 719 (1984) (holding that the lack of contrary medical evidence lends weight to applicant's evidence); see also Chavez, 6 M.S.P.R. at 423 (noting that "the qualifications of the expert" and "the extent and duration of the expert's familiarity with or treatment of the applicant's condition," among others, are important factors).

But here, OPM did not express any doubt as to the credentials or veracity of Dr. Nichols or Dr. Rummler, and the only medical evidence as to whether Vanieken-Ryals suffered from disabling psychological disorders were their reports and documentation.[8]

---

[7]     Our decision in Trevan v. Office of Pers. Mgmt., 69 F.3d 520, 526-27 (Fed. Cir. 1995), is inapposite because in that case, we held that the MSPB and OPM did not err by relying on a lack of objective medical evidence supporting a claim of disability when "OPM has produced [objective] medical evidence [such as X-rays] that is inconsistent with subjective claims of disability."  There, the MSPB essentially held that the applicant's lack of supporting objective medical evidence rendered his subjective evidence less probative than the contrary objective evidence submitted by OPM.  Such a comparison, when subjective evidence is deemed to be less probative than contrary objective evidence, is certainly factual in nature, but that is not the situation here where the only medical evidence is the so-called "subjective" evidence submitted by Vanieken-Ryals.  And in Trevan, we acknowledged that "objective medical evidence is not the only factor to be assessed in determining disability."  Id. (citing Chavez, 6 M.S.P.R. at 419, 422).

[8]     Vanieken-Ryals also submitted written statements in which she described her own symptoms and experiences such as, for example, her inability to maintain basic hygiene and panic attacks preventing her leaving her home.  Pet. App. at 171.  She also ultimately testified before the AJ on appeal to the MSPB, as did her husband who gave

OPM also did not make any findings that Dr. Nichols' or Dr. Rummler's reports did not utilize "established diagnostic criteria" or were "inconsistent with generally accepted professional standards." See 5 C.F.R. § 339.104. Nor were any such concerns raised by the MSPB in its review. And when, as here, the medical evidence indicates physical or mental incapacity so severe as to clearly establish an inability to perform the tasks of any job—such as inability to leave home, drive, or accomplish even basic life tasks—the medical evidence need not enumerate what specific job tasks are rendered unfeasible by the disability. Mullins-Howard v. Office of Pers. Mgmt., 71 M.S.P.R. 619, 627 (1996) (holding that a psychiatrist's assessment that his patient "was unable to leave her home, see visitors, drive, and had great difficulty managing ordinary household tasks such as cooking and doing laundry" was sufficient to establish an incapacity to perform the duties of her job regardless of the specific tasks required). When weighing the probative value of medical evidence involves such a comprehensive and fact-intensive process, flatly refusing to consider such medical evidence simply for being "purely subjective" is a critical legal error and, at least in a case like this, clearly prejudicial.

Here, it is clear that both OPM and the MSPB committed this legal error. As already discussed, the decisions of both agencies included numerous statements evidencing a belief that Vanieken-Ryals' medical evidence should be afforded no

---

supporting testimony. Neither OPM nor the MSPB gave any indication that she or her husband was not a credible witness, and certainly no Hillen analysis was conducted. See Hillen v. Dep't of the Army, 35 M.S.P.R. 453, 458 (1987). Nevertheless, OPM and the MSPB dismissed Vanieken-Ryals' symptoms and psychological reactions to her job as "situational," thus not serious or enduring enough to be disabling. While we have grave doubts about this characterization of her experiences given that her testimony was seemingly considered credible, we need not and do not address here whether OPM committed an error of law "going to the heart of the administrative determination" in its consideration of Vanieken-Ryals' own statements.

probative weight at all due to the lack of "objective" evidence such as "formal cognitive testing." See, e.g., Pet. App. at 146. In addition, neither the MSPB nor OPM discussed the content of Dr. Nichols' or Dr. Rummler's evidence in any meaningful way, which further demonstrates that it was not properly considered. OPM, for example, resorted to a laundry list of "objective" tests and documents that the medical evidence did <u>not</u> contain rather than examining the evidence and evaluating what it <u>did</u> contain. See <u>id.</u> This is precisely the type of "error going to the heart of the administrative determination," if not a "substantial departure from important procedural rights," that the Supreme Court charged this court to guard against. See <u>Lindahl</u>, 470 U.S. at 791.

Therefore, we hold that OPM's and the MSPB's adherence to such a rule, unsupported in the law, was arbitrary, capricious, and contrary to law; thus this case must be remanded for proper consideration of Vanieken-Ryals' medical and other evidence. Further, since the MSPB's finding that reassignment possibilities had not been "definitively exhausted" was based in large part on its rejection of this evidence, that issue must also be revisited on remand.

## CONCLUSION

For the foregoing reasons, the decision of the MSPB is vacated, and the case is remanded for further proceedings. On remand, the MSPB is instructed to properly consider Vanieken-Ryals' already-submitted medical and other evidence consistent with this opinion and other applicable precedent.

<u>VACATED and REMANDED</u>.