# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BRENDA L. THOMAS,<br>Appellant, | DOCKET NUMBER<br>DE-844E-15-0524-I-1 |
| v. | |
| OFFICE OF PERSONNEL<br>MANAGEMENT,<br>Agency. | DATE: May 6, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Brenda L. Thomas, Litchfield Park, Arizona, pro se.

Thomas Styer, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1   The Office of Personnel Management (OPM) has filed a petition for review of the initial decision, which reversed its reconsideration decision denying the appellant's application for disability retirement benefits under the Federal Employees' Retirement System (FERS).   Generally, we grant petitions such as

---

[1]   A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.   Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.   In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.   *See* 5 C.F.R. § 1201.117(c).

this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    On or about March 15, 2014, the appellant, a GS-7 Immigration Services Assistant, submitted an application for disability retirement benefits under FERS to her employing agency, the Department of Homeland Security (DHS). Initial Appeal File (IAF), Tab 6 at 83-84. On her application, the appellant stated that she became disabled for her position in November 2013 due to fibromyalgia because she could not sit for more than 15 to 30 minutes at a time, could not walk or stand for "very long," and her arms and wrists sometimes became weak, affecting her ability to lift items. *Id.* at 83. After completing its portions of the disability retirement application, the agency forwarded the application package to OPM. *Id.* at 83-91.

¶3    On June 10, 2015, OPM denied the appellant's disability retirement application, finding that the evidence did not establish that her medical condition prevented her from performing her duties or that reasonable accommodation was not possible. *Id.* at 76-78. The appellant requested reconsideration of OPM's

initial decision and provided additional medical documentation. *Id.* at 8-75. In a July 23, 2015 reconsideration decision, OPM affirmed its initial decision. *Id.* at 4-6.

¶4    The appellant timely appealed the reconsideration decision to the Board and requested a hearing, which she subsequently waived. IAF, Tabs 1, 9. In an initial decision based on the written record, the administrative judge reversed OPM's reconsideration decision, finding that the appellant had shown by preponderant evidence that she was entitled to disability retirement benefits. IAF, Tab 12, Initial Decision (ID). OPM has filed a timely petition for review of the initial decision, and the appellant has responded in opposition to OPM's petition for review. Petition for Review (PFR) File, Tabs 1, 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5    An employee bears the burden of proving by preponderant evidence her entitlement to disability retirement. *Christopherson v. Office of Personnel Management*, 119 M.S.P.R. 635, ¶ 6 (2013); 5 C.F.R. § 1201.56(b)(2)(ii). To qualify for disability retirement benefits under FERS, an employee must show that: (1) she has completed at least 18 months of creditable civilian service; (2) while employed in a position subject to FERS, she became disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or, if there is no such deficiency, the disabling medical condition is incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition is expected to continue for at least 1 year from the date the disability retirement benefits application is filed; (4) accommodation of the disabling medical condition in the position held is unreasonable; and (5) she did not decline a reasonable offer of reassignment to a vacant position. *Christopherson*, 119 M.S.P.R. 635, ¶ 6; *see* 5 U.S.C. § 8451; 5 C.F.R. § 844.103(a).

¶6    The administrative judge found that the appellant timely filed her FERS disability retirement application, had completed at least 18 months of creditable civilian service, and had not declined a reasonable offer of reassignment to a vacant position.  ID at 4.  The administrative judge further found that the appellant had shown that she suffered from fibromyalgia, which rendered her incapable of useful and efficient service, and that her disabling condition was likely to last for more than 1 year.  ID at 3-6.  In addition, the administrative judge found that the appellant had shown that her medical condition could not be reasonably accommodated.  ID at 6-7.

¶7    The parties do not dispute that the appellant has completed at least 18 months of creditable civilian service or that she has not declined a reasonable offer of reassignment, and we discern no basis for disturbing these findings on review.  PFR File, Tabs 1, 3.  Therefore, the only remaining issues in this appeal relate to the appellant's medical condition and its effects on her ability to perform in her position, i.e., eligibility criteria (2), (3), and (4).  For the following reasons, we agree with the administrative judge that the appellant has met these criteria and has shown that she is entitled to a disability retirement.

<u>The administrative judge correctly found that the appellant has shown by preponderant evidence that she cannot render useful and efficient service in her position and that her disabling condition is likely to last for at least 1 year.</u>

¶8    As noted above, an applicant for disability retirement under FERS must show, among other things, that she is "unable, because of disease or injury, to render useful and efficient service in [her] position."  5 U.S.C. § 8451(a)(1)(B).  An applicant may satisfy this statutory requirement in one of two ways; namely, by showing that the medical condition:  (1) caused a deficiency in performance, attendance, or conduct; or (2) is incompatible with useful and efficient service or retention in the position.  *Henderson v. Office of Personnel Management*, 117 M.S.P.R. 313, ¶ 16 (2012) (articulating this standard in the context of an application for disability retirement under the Civil Service

Retirement System); *see Jackson v. Office of Personnel Management*, 118 M.S.P.R. 6, ¶ 7 (2012) (applying the holding in *Henderson* to disability retirement cases under FERS); *see also* 5 U.S.C. § 8451(a)(1)(B); 5 C.F.R. § 844.103(a)(2). Under the first method, an applicant may establish her entitlement to a disability annuity by showing that the medical condition affected her ability to perform specific work requirements, prevented her from being regular in attendance, or caused her to act inappropriately. *Jackson*, 118 M.S.P.R. 6, ¶ 8. Under the second method, she may show that the medical condition is inconsistent with working in general, in a particular line of work, or in a particular setting. *Id.* It is not necessary, however, that the medical evidence unambiguously and without contradiction shows how the medical condition affects specific job duties or indicates that the employee cannot meet the requirements of her position to establish entitlement to disability retirement benefits. *Id.* Rather, an employee establishes her entitlement to disability retirement benefits if, considering the totality of the evidence, it is more likely true than untrue that the employee's medical impairments preclude her from rendering useful and efficient service in her position. *See id.*

¶9        A determination of disability must be based on the probative value of all the evidence, including: objective clinical findings; diagnoses and medical opinions; subjective evidence of pain and disability; and all evidence relating to the effect of the employee's condition on her ability to perform in the position she last occupied. *Henderson v. Office of Personnel Management*, 109 M.S.P.R. 529, ¶ 12 (2008). "OPM must consider all of an applicant's competent medical evidence, and an applicant may prevail based on medical evidence that . . . consists of a medical professional's conclusive diagnosis, even if based primarily on his/her analysis of the applicant's own descriptions of symptoms and other indicia of disability." *Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1041 (Fed. Cir. 2007).

¶10      Here, the record includes a number of medical records from November 2013—the date the appellant claims she became disabled for work— through the present describing her subjective symptoms and limitations, as she reported them to the medical professionals, and their diagnoses of fibromyalgia.[2] IAF, Tab 6 at 83. Specifically, the record contains: (1) November 5 and November 19, 2013 treatment records by Dr. C.G., a physical medicine and rehabilitation physician, noting that, although the appellant's workplace injuries were resolving, she had developed "widespread diffuse myofascial-like myalgias with multiple areas of bilateral tenderness noted along with complaints of fatigue and tiredness" and opining that fibromyalgia "may be a significant contributing factor to her continued complaints and continued more migratory complaints," *id.* at 10, 69-71; (2) November 26, 2013, February 26, 2014, March 14, 2014, and April 8, 2014 treatment records by Dr. R.S., a rheumatologist, stating that: the appellant complained of pain, fatigue, and sleeplessness and that her presentation was consistent with fibromyalgia; she could not sit for long periods of time due to her fibromyalgia; and she had not tolerated the prescribed pain medication, including Lyrica, which made her too sleepy, *id.* at 103-08, 111; (3) February 10, March 17, and December 10, 2014 records by Dr. A.S., the appellant's primary care physician, stating that the appellant was diagnosed with fibromyalgia, she needed to get up every 30 minutes at work due to her back pain, and she had not tolerated several prescribed medications, *id.* at 72-73, 100-02, 110; (4) March 17 and April 11, 2014 reports by C.E., a nurse practitioner, stating that the appellant presented with back and shoulder pain and that she was unable to sit for an extended period of time, *id.* at 94-98, 112; and (5) a November 10, 2015 treatment record from a pain management clinic stating that: the appellant presented with fibromyalgia; experienced constant widespread and regional pain, sinus problems,

---

[2] The record additionally contains medical records from September through November 19, 2013, regarding the appellant's treatment and physical therapy for injuries sustained from workplace falls on August 29 and October 8, 2013. IAF, Tab 6 at 10-71.

headache, fatigue, joint swelling, muscle cramps, gait difficulties, anxiety, and depression; and she had been referred to physical therapy for pain relief, IAF, Tab 10 at 2-4. The record also contains a contrary report; namely, a June 16, 2014 medical evaluation for the Arizona Department of Economic Security, Disability Determination Services, stating, among other things, that the appellant's "fibromyalgia testing was negative." IAF, Tab 11 at 11-13.

¶11    The record additionally contains several medical opinions regarding the appellant's fibromyalgia and her ability to perform her duties. In particular, Dr. A.S. completed a physical residual functional capacity questionnaire dated December 10, 2014, stating that the appellant was unable to work due to pain, which worsened with prolonged sitting or standing and with increased stress, and drowsiness caused by her medication. IAF, Tab 6 at 72-73. Dr. A.S. explained that the appellant's impairments have lasted or could be expected to last at least 12 months and stated that the appellant was not a malingerer. *Id.* at 72. Dr. A.S. further stated that the appellant's experience of pain and other symptoms was "frequently" severe enough to interfere with the attention and concentration required to perform simple work tasks. *Id.* at 73. In a September 23, 2015 note, Dr. A.S. stated again that the appellant was unable to work due to her fibromyalgia, explaining that the appellant could not use a computer due to her right wrist pain, which worsened with prolonged use, and could not sit for more than 15 minutes at a time due to her neck and back pain and swelling. IAF, Tab 8 at 3. The record contains a contrary medical opinion by Dr. D.C. recommending that the appellant's application for disability retirement be denied because, upon review of the available medical documentation, the record did not support a finding that the appellant's impairment due to musculoskeletal conditions was

severe enough to result in occupational disability for her sedentary job.[3]   IAF, Tab 6 at 92.

¶12        As to subjective evidence of pain and disability, the record contains written statements from the appellant and her mother, both dated September 24, 2015. IAF, Tab 8 at 4-5.  In the appellant's written statement, she explained that:  she cannot sit for longer than 15 minutes at a time before her upper and lower back start to swell and she is in "excruciating pain"; she cannot spend more than 30 minutes in a grocery store because her lower back and hips start to hurt; her right forearm and wrist are constantly swollen and she sometimes has "no strength" in her right hand; her body is stiff and it is difficult to walk for the first moments after she stands up;  her right toes are stiff and it is painful to straighten them; the bottom of her right foot is sometimes very tender; her left knee is sometimes swollen, making it difficult to walk; she needs to take a break after 15 minutes of housework because her lower back and hips start to hurt; and she spends most of the day lying down.  *Id.* at 5.  She also stated that she takes Lyrica at night for pain, which allows her to sleep through the night, but its effects leave her "non-functioning throughout the next day."  *Id.*  The appellant's mother explained that:  the appellant's daily activities are "very limited"; she spends most of the day lying around; she cannot go shopping anymore because she is "in pain and it hurts her to walk, sit or stand too long because her joints swell and hurt"; and she is "always stressed and depressed" and "is just a shell of herself, of what her life was before her falls."  *Id.* at 4.

¶13        As to other evidence showing the effect of the appellant's condition on her ability to perform in her position, the record contains:  (1) a position description indicating that the appellant's duties include, among other things, assisting in the processing and adjudication of immigration applications and petitions by "conducting security checks, supporting Immigration Services Officers, managing

---

[3] Although the date of Dr. D.C.'s medical opinion is partially illegible, it appears to be dated January 23, 2015.  IAF, Tab 6 at 92.

correspondence, maintaining customer support, processing documents and fees, and performing analysis on files, reports, and information systems or databases," IAF, Tab 6 at 113-14; (2) a performance plan and appraisal for 2013, *id.* at 115-29; and (3) the appellant's supervisor's statement indicating that the appellant's attendance had been deficient since January 2014 and that it was impossible to assign the appellant any duties because the appellant "never knows if she will have the ability to perform them due to constant pain" or if she will be in "so much pain that it makes it impossible for her to report for duty," *id.* at 85-86.

¶14    On the basis of this record, the administrative judge determined that the appellant met her burden of establishing that, while employed at DHS, she suffered from a disabling medical condition that was incompatible with useful and efficient service or retention in her position. ID at 4-6. Specifically, the administrative judge found that: the appellant was disabled due to fibromyalgia because she could not sit or stand for more than 15 minutes at a time; the prescribed medication interfered with her ability to maintain a clear mind, as required to complete her assigned tasks; and her medical condition prevented her from being in regular attendance. ID at 5-7. The administrative judge rejected OPM's arguments below that the appellant had been noncompliant with treatment, explaining that, although one treatment record noted concern with the appellant's efforts in April 2014, medical records showed that therapy efforts were ongoing and that any concerns about the appellant's efforts appear to have been satisfied by the appellant's later conduct. ID at 6; IAF, Tab 6 at 94. Additionally, the administrative judge found that the appellant met her burden of showing that her disabling condition was expected to continue for at least 1 year from the date of her application for disability retirement. ID at 4-5. We agree, and, for the reasons discussed below, we find that OPM's contentions on review do not provide any basis to disturb these findings.

¶15    On review, OPM argues that the administrative judge erred in finding that the appellant was entitled to disability retirement because the medical evidence

did not "unambiguously and without contradiction" indicate that she could not perform the duties or meet the requirements of her position. PFR File, Tab 1 at 6. Specifically, according to OPM, the June 16, 2014 Arizona Disability Determination Services evaluation, which indicates that the appellant tested negative for fibromyalgia, and the January 23, 2015 medical opinion by Dr. D.C., which found that the medical evidence did not support a finding of disability, establish contradiction and ambiguity and "render the case less than preponderant." PFR File, Tab 1 at 6-7; *see* IAF, Tab 6 at 92, Tab 11 at 11-13.

¶16        As stated above, however, it is not necessary that the medical evidence unambiguously and without contradiction show how the medical condition affects specific job duties or indicate that the employee cannot meet the requirements of her position to establish entitlement to disability retirement benefits. *Henderson*, 117 M.S.P.R. 313, ¶¶ 16, 18. Moreover, the administrative judge considered the contrary evidence—specifically, the June 14, 2014 evaluation for the Arizona Disability Determination Services stating that "Fibromyalgia testing was negative" and other medical reports, most of which were from 2013—and concluded that they were outweighed by the other evidence of record. ID at 4-5; IAF, Tab 6 at 5, Tab 11 at 11-13. Although the administrative judge did not discuss the January 23, 2015 medical opinion, an administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision. *Diggs v. Department of Housing & Urban Development*, 114 M.S.P.R. 464, ¶ 8 (2010). In any event, we agree with the administrative judge that the record evidence showing that the appellant's fibromyalgia precludes her from rendering useful and efficient service in her position outweighs the contrary evidence cited by OPM.

¶17        In assessing the probative weight of medical opinion, the Board considers whether the opinion was based on a medical examination, whether the opinion provided a reasoned explanation for its findings as distinct from mere conclusory assertions, the qualifications of the expert rendering the opinion, and the extent

and duration of the expert's familiarity with the treatment of the appellant. *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶ 15 (2008). Here, the June 16, 2014 evaluation by the Arizona Disability Determination Services is based on a one-time examination by Dr. B.B. IAF, Tab 11 at 11-13. In addition, the evaluation provides no explanation for its statement that "Fibromyalgia testing was negative," failing to even identify what test Dr. B.B. administered to the appellant or what diagnostic criteria he considered.[4] *Id.* at 13. Likewise, there is no indication that Dr. D.C. examined the appellant prior to rendering the January 23, 2015 medical opinion or that he had any familiarity with the treatment of the appellant; rather, he appears to have merely reviewed some of the appellant's medical records to make a recommendation on her application for disability retirement. IAF, Tab 6 at 92. On the other hand, as discussed above, Dr. C.G., Dr. A.S., Nurse C.E., and Dr. R.S. had ongoing treatment relationships with the appellant, their findings were based on medical examinations of the appellant, and their opinions and treatment records contained detailed descriptions of the appellant's presentation and subjective complaints. IAF, Tab 6 at 10, 69-73, 93-112, Tab 8 at 3. Accordingly, we find that the diagnoses and medical opinions by Dr. C.G., Dr. A.S., Nurse C.E., and Dr. R.S. are entitled to more weight than the June 16, 2014 evaluation and the January 23, 2015 opinion. *See Slater*, 108 M.S.P.R. 419, ¶ 15. We thus find no merit to OPM's assertion these two reports outweigh the other medical evidence or "render the case less than preponderant." PFR File, Tab 1 at 6-7.

---

[4] We take notice of the fact that, while there are currently no diagnostic laboratory tests for fibromyalgia, the American College of Rheumatology has established criteria for a diagnosis of fibromyalgia, which includes a history of widespread pain lasting more than 3 months and other general physical symptoms such as fatigue, waking unrefreshed, and cognitive (memory or thought) problems. *Questions and Answers about Fibromyalgia–How is Fibromyalgia Diagnosed?*, National Institute of Arthritis and Musculoskeletal and Skin Diseases (July 2014), http://www.niams.nih.gov/health_info/fibromyalgia; 5 C.F.R. § 1201.64 (stating that official notice may be taken of matters that can be verified).

¶18    OPM further argues that the administrative judge erred by relying on the September 23, 2015 statement by Dr. A.S. and the November 10, 2015 treatment record from the pain management clinic on the grounds that they are conclusory and fail to explain how the appellant is prevented from performing her job tasks or unable to work at any job, in a particular line of work, or in her work setting. *Id*. at 4-6.  As stated above, however, medical evidence showing how a medical condition affects specific job duties or indicating that an appellant cannot meet the requirements of her position is not required to prove entitlement to disability retirement benefits.  *Henderson*, 117 M.S.P.R. 313, ¶ 18.  Moreover, we disagree with OPM's contention that these records are conclusory.  The September 23, 2015 letter from Dr. A.S., which states that the appellant has fibromyalgia and is unable to work, provides a reasoned explanation for this conclusion; specifically, Dr. A.S. explained that the appellant cannot sit for more than 15 minutes at a time due to her neck and back pain and swelling and cannot use a computer due to right wrist pain, which worsens with prolonged use.  IAF, Tab 8 at 3.  The November 10, 2015 treatment record states that the appellant presented with fibromyalgia, describes her symptoms, lists her prescribed medications, and states that she has been referred to physical therapy.  IAF, Tab 10 at 2-5.  We discern no conclusory medical opinion in this report, and the administrative judge did not rely on it for any such opinion.  *Id.*; ID at 5.  Rather, the administrative judge cited this report because it lent support to the September 23, 2015 letter from Dr. A.S. and confirmed, based on the doctor's observation, the appellant's complaints of pain and weakness.  ID at 5.  The administrative judge also mentioned that this treatment record was important because it noted that the appellant was taking Lyrica and that she had been referred to physical therapy. *Id*.  Moreover, we reject OPM's argument to the extent its premise is that these reports' diagnosis of fibromyalgia are based on the appellant's self-reported symptoms.  IAF, Tab 10 at 2.  Furthermore, qualified medical opinions based on an appellant's self-reported symptoms are probative of disability, especially

where, as here, they are corroborated by the record. *See Vanieken-Ryals*, 508 F.3d at 1040-44.

¶19    OPM further argues that the administrative judge erred by affording great weight to the written statements by the appellant and her mother because the record "clearly lacks competent medical evidence to support and corroborate those written statements." PFR File, Tab 1 at 6. As discussed above, however, the appellant's pain, weakness, fatigue, inability to sit or stand for more than 15 minutes at a time, intolerance of pain medication, and drowsiness associated with Lyrica are well supported by the medical evidence of record.[5] Where, as here, subjective evidence, such as testimony or written statements, regarding an appellant's symptoms is uncontradicted in the record, it "may be entitled to great weight on the matter of disability." *Vanieken-Ryals*, 508 F.3d at 1041 (quoting *Chavez v. Office of Personnel Management*, 6 M.S.P.R. 404, 422 (1981)). Thus, we find that the administrative judge properly afforded significant weight to the written statements provided by the appellant and her mother. IAF, Tab 8 at 4-5.

¶20    We discern no other basis for disturbing the administrative judge's findings that the appellant met her burden of establishing that she suffered from a disabling medical condition that was incompatible with useful and efficient service or retention in her position and that her disabling condition is expected to last at least 1 year from the date of her disability retirement application. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions);

---

[5] In addition to the medical evidence supporting the appellant's subjective complaints, we take notice of the fact that her statements regarding her pain, fatigue, and muscle weakness are consistent with the characteristic symptoms of fibromyalgia. *See Stedman's Medical Dictionary* 725 (Lippincott Williams & Wilkens 28th ed. 2006); 5 C.F.R. § 1201.64. We also take notice of the fact that sleepiness and difficulty concentrating are common side effects of Lyrica. *See* Medication Guide, Lyrica, U.S. Food and Drug Administration, http://www.fda.gov/downloads/Drugs/DrugSafety/UCM152825.pdf (last visited Mar. 21, 2016); 5 C.F.R. § 1201.64.

*Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The administrative judge correctly found that the appellant's disabling condition could not be reasonably accommodated.

¶21    Under FERS, an individual is not eligible for disability retirement benefits if there is a reasonable accommodation for the disabling condition in the position held. 5 U.S.C. § 8451(a); *Confer v. Office of Personnel Management*, 111 M.S.P.R. 419, ¶ 29 (2009); 5 C.F.R. § 844.103(a)(4).  Here, the employing agency indicated that the appellant had been offered, but declined, several reasonable accommodations, including relocation of her work station, a work station that would allow her to alternate between sitting and standing throughout the day, and an assignment to lighter duty tasks within her job description.  IAF, Tab 6 at 87.  The administrative judge found, however, that the appellant's disabling condition could not be reasonably accommodated because: her attendance had been unacceptable and was unlikely to improve; her pain prevented her from sitting or standing for more than 15 minutes at a time and alternating between them more frequently would be of little help; and her prescribed medication interfered with her ability to maintain a clear mind, which affected her ability to complete her assigned tasks.  ID at 6-7.

¶22    On review, OPM argues that the administrative judge erred in finding that the appellant could not be reasonably accommodated because:  "1) there is no documentary medical or other evidence showing [the offered accommodations] were unreasonable, and/or 2) she made no attempt to perform the accommodated duties showing they were unreasonable."  PFR File, Tab 1 at 7.  The relevant regulations, however, provide only that, to receive a disability annuity, an individual must show that "[a]ccommodation of the disabling medical condition in the position held must be unreasonable."  5 C.F.R. § 844.103(a)(4).  We find no support in the relevant statutes, regulations, or case law for OPM's assertion that an applicant for disability retirement benefits must attempt to perform her

duties with an accommodation to demonstrate that the accommodation is unreasonable. Further, there is no requirement that an appellant submit evidence specifically showing that a given accommodation is unreasonable. *See, e.g.*, *Thomas v. Office of Personnel Management*, 54 M.S.P.R. 686, 691 (1992) (finding accommodation unreasonable by looking to the medical evidence and comparing it to the job requirements).

¶23    Here, the appellant's position description shows that a significant number of her duties require her to use a computer to assist in the processing and adjudication of immigration applications and petitions and to perform file analysis and report preparation. IAF, Tab 6 at 114-15. Because the appellant cannot sit or stand for more than 15 minutes at a time and cannot use a mouse because of pain and swelling in her right wrist, she cannot perform her computer duties for a full 8-hour workday even if she is allowed to alternate between sitting and standing. *Id.*; *see* IAF, Tab 8 at 3. The appellant's disability is compounded by the fact that her prescribed medication, Lyrica, makes her drowsy and, according to the appellant, "non-functioning" the day after she takes it. IAF, Tab 6 at 114-15; *see* IAF, Tab 8 at 5. We agree with the administrative judge's finding that this side effect of the appellant's medication would interfere to an important degree with her assigned duties, which require a clear mind. ID at 7; *see* IAF, Tab 6 at 114-15. Although the agency offered to accommodate the appellant with lighter duties, we fail to see, and OPM has not explained, how lighter duties would reasonably accommodate the appellant's disability while still allowing her to continue to perform the duties of her official position, most of which require using a computer and having mental clarity. IAF, Tab 6 at 114-15; *see Marino v. Office of Personnel Management*, 243 F.3d 1375, 1377 (Fed. Cir. 2001) (explaining that a light-duty assignment does not constitute an "accommodation" precluding eligibility for disability retirement under FERS if the assignment does not allow the employee to perform the duties of her official position). Furthermore, as the administrative judge correctly noted, the

appellant's attendance has been deficient and is unlikely to improve with any of the agency's proffered reasonable accommodations. ID at 7. Given that the appellant spends most of her day lying down and she can barely leave her house or perform household chores due to her pain and fatigue, we find no basis to disturb the administrative judge's conclusion that her attendance will not improve even if some sort of workplace accommodation were to be made.

¶24    Lastly, OPM argues that the administrative judge erred because he "failed to consider" the agency's certification that "[r]eassignment is not necessary because [the] employee's performance is fully successful and there are no medical restrictions which keep the employee from performing critical duties or attending work altogether." PFR File, Tab 1 at 7. As noted above, an administrative judge's failure to mention all of the evidence of record, including what the agency certified as to a possible reassignment, does not mean that he did not consider it in reaching his decision. *Diggs*, 114 M.S.P.R. 464, ¶ 8. In any event, we have considered OPM's argument regarding the agency's certification that reassignment was not necessary and find that it provides no basis to disturb the initial decision. IAF, Tab 6 at 88. As discussed above, the appellant has shown by preponderant evidence that she is disabled for her position and that she cannot be reasonably accommodated. We find that the agency's conclusory statement that reassignment is not necessary and that the appellant does not have any medical restrictions that would prevent her from performing critical duties of her position or from attending work altogether is not persuasive and does not outweigh the other record evidence discussed above. *See Francois v. Office of Personnel Management*, 64 M.S.P.R. 191, 195 (1994) (declining to afford weight to the agency's certification that reassignment was not necessary where "OPM has not proffered any explanation for why it credited the administrative officer's conclusory statement and checking off a box on a preprinted form" over more probative, detailed evidence).

**ORDER**

We ORDER OPM to grant the appellant's application for disability retirement.  OPM must complete this action no later than 20 days after the date of this decision.

We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order.  The appellant, if not notified, should ask OPM about its progress.  *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  *See* 5 C.F.R. § 1201.182(a).

This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

**NOTICE TO THE APPELLANT REGARDING**
**YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You

must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal

Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.



| | DFAS CHECKLIST |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.